EDWARD ROMINE, Plaintiff-Appellant, *v.* BRIAN J. SCOTT *et al.*, Defendants-Appellees.

(No. 70-18; 

Second District—December 3, 1970.

Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, for appellant.

Gates W. Clancy, and James S. Mills, of Geneva, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff appeals from the judgment entered upon a $7,000 jury verdict for personal injuries and from the order denying a new trial.

On July 12, 1967, Romine had been driving his Corvair in a westerly direction behind a DuPage Salt Company's truck loaded with blocks of farm salt and driven by Scott. A block of the salt fell from the truck onto one of the west bound lanes. Romine testified that he suddenly observed a block of salt in a dip in the roadway ahead of him, attempted to steer clear, but that his car struck it, jamming the steering mechanism. This forced his car to go off the road, striking either a ditch or a pole or both. Plaintiff testified that at the impact his left foot was pushed through the floor board of his car.

Scott testified that as he glanced into his rear view mirror he saw a block of salt fall from his truck, and he then stopped some 600 feet ahead and walked back. He saw plaintiff and his car off the road, some 300 feet behind where he had parked his truck. Defendants introduced evi-

dence of a statement allegedly made by Romine after the occurrence that he "lost control". The statement made no reference to a salt block.

Plaintiff was seen in the emergency room of the hospital on July 12th. The orthopedic surgeon in his testimony described a finding of a plateau fracture of the left knee and multiple fractures of the heel bone of the left foot. Open surgery was performed on July 17, 1967, resulting in the removal of knee cartilage and a bone graft. A surgical screw was inserted in the knee joint, and a pin was inserted in the heel bone. Plaintiff remained in the hospital until July 31, 1967, at which time he was discharged with a leg cast; he was ambulatory on crutches. A second operation was performed on December 5, 1967; the screw was removed from the knee, cartilage was removed from the heel joint, and a fusion was performed to correct alignment of the foot. Discharge from the hospital was on December 11, 1967.

It was uncontradicted that plaintiff suffered permanent impairment, consisting of a loss of normal turning in the heel that was noticeable when he walked on uneven ground, a slight limp with loss of normal gait, and an inability to run or use the limb in any prolonged athletic activities or labor. The injuries were described as progressive with the possibility of future arthritis, but with no future operative procedures indicated (except for the possibility of opening the knee joint and cleaning and removing spurs and debris if future aggravation occurred in spite of the preventive measures prescribed). There was evidence that the condition produced pain.

Romine was thirty years of age, employed in office work as an engineer, and in previous good health. He introduced evidence of out-of-pocket expenses totaling $6,181.43, which included $1,224.00 in doctor's fees, $1,310.70 in hospital expenses, $180.73 for drugs, and $3,466.00 in time lost from his employment. At the time of trial, plaintiff had changed employers but was pursuing similar work at an increased salary.

Romine argues that the verdict was clearly inadequate in assessing only some $800 above expenses for injuries described as major and severe. He urges that the verdict was improperly influenced by evidence of "collateral source" payments and by inflammatory argument; thus he contends that he should have a new trial on the issue of damages only, or, in the alternative, a new trial.

The rules of law which we believe govern this case are not in dispute. The amount of compensation for personal injury is ordinarily a question of fact for the jury. If the jury has been correctly instructed as to the elements measuring damages and if there is no showing that the size of the verdict is the result either of passion or prejudice or the jury's having obviously overlooked an element of damages, then the amount awarded

will not be disturbed on review. *Johanneson v. Ring* (1967), 82 Ill.App.2d 340, 346; *Mineiko v. Rizzuto* (1965), 65 Ill.App.2d 35, 38; *First Nat. Bank of Elgin v. Szwankowski* (1969), 109 Ill.App.2d 268, 274.

While the rules are not in dispute, we noted in *Olson v. Fleetwood* (1970), 116 Ill.App.2d 411, 416, 417 that there is a "deplorable lack of consistency in the reported cases on the question of inadequate verdicts in personal injury cases". (See also Anno. 11 A.L.R.3d 9, Secs. 3, 33, and later case service; and 15 I.L.P. 162.) However, the impact of our holding in *Olson v. Fleetwood*, which defendant cites, is not to *automatically* find inadequate any verdict which is less than out-of-pocket expenses (*Cf. Lazzaro v. Garrett* (1968), 100 Ill.App.2d 452), nor to always find adequate any verdict which exceeds such expenses (*cf. Mineiko v. Rizzuto, supra*). Each case must stand upon its own particular circumstances in determining whether reasonable and fair compensation has been awarded.

Here, the jury was properly instructed, and there is nothing to indicate that it did not consider all proper elements of damages. That this jury exercised its discretion on a lower scale than another trier of the facts might have employed does not amount to proof that the verdict is manifestly inadequate.

Nor do we find from the whole record that the verdict was unjustly influenced by the trial proceedings.

It is plaintiff's argument that defense counsel introduced reversible error into the case by the cross-examination of the bookkeeper of plaintiff's employer:

"Q: As a matter of fact, according to your records, you paid him in July of 1967—didn't you—for a full month's work * * *.

A: Yes.

Q: And you continued to pay him?"

At this point plaintiff's counsel objected, and the issue whether these questions invited consideration of collateral source payments by the jury was heard in chambers. After the recess, the court permitted the answer to stand but ruled that no further interrogation on the subject would be allowed.

It is conceded that a plaintiff has a right to recover for damages irrespective of benefits he may receive from other sources. (*Wolfe v. Whipple* (1969), 112 Ill.App.2d 255, 266; *Mineiko v. Rizzuto*, 65 Ill.App.2d 35, 38, *supra*.) Defendant contends, however, that plaintiff cannot complain of error which he invited, citing *Steele v. Brown*, 43 Ill.App.2d 293 (1963-Abst.) for the familiar rule. The bookkeeper testified that plaintiff had been earning $700 per month. She was asked to calculate the lost time, first as to 1967. Defense counsel objected to the

calculation unless the records, as the best evidence, were produced. Plaintiff's counsel then marked the records for identification, and the witness responded that plaintiff lost 3½ months in 1967 at $700 per month, or "$3,147.00", and $319.00 in 1968, for a total of $3,466.00. On cross-examination, prior to the inquiry which we have noted above, the witness had conceded that the payroll records showed no evidence of plaintiff's accident, absence from work, or part-time payments that she had previously testified as being included in her calculation. Plaintiff had not testified to the specific times he was completely away from his work or working part time; and he had admitted at trial that his answer to pre-trial interrogatories in which answer he had claimed over $6,000 in lost time, was erroneous. (The bookkeeper's calculation of 3½ months at $700 totaling $3,147 rather than $2,450 is in itself confusing.)

In these circumstances, the payroll entries became the sole source of calculating the exact income lost and thus were the proper object of thorough cross-examination. There was no evidence, except for the assertion of plaintiff's counsel, that the payments shown constituted sick leave on other benefits. We find that under the total circumstances, the inquiry did not mislead the jury and does not constitute reversible error since it was invited by the nature of plaintiff's proof.

In closing argument defense counsel invited the jury to observe the salt block in evidence and asserted it was "* * * proof positive the top of this salt block was sawed right here, and if it wasn't sawed [plaintiff's trial counsel] will get the chance to answer you * * *. There is nothing where he claims it was broken and yet that is what he is trying to sell you. Well we don't have the salt in this case for you to consider".

No objection to this comment was made by trial counsel, but plaintiff now urges that this was an inflammatory attack on plaintiff's counsel which was not based upon the evidence and which improperly induced the jury to reduce the size of its verdict. There was a considerable gap in the record as to whether the chipped block in evidence was the one which allegedly caused the accident. Defendant's driver had noted seeing a block of salt on the road and did not think it had been broken. Plaintiff's trial counsel had come upon the scene shortly after the accident, and in his deposition had said that he found the salt block along the shoulder of the highway. Called as a witness by the defendant, he testified that he received the exhibit from an officer at the scene after he had returned from taking plaintiff to the hospital. Plaintiff's counsel also said he later wrote to plaintiff advising him that he had the salt block. The police officer recollected seeing the block of salt "with a chip out of it" but could not positively identify the exhibit in court as the one he had seen.

The argument, in context, is not cause for reversal. Counsel may comment on the appearance of an exhibit. 53 Am. Jur., Trial, Sec. 463. The reference to opposing trial counsel was not of the quality which would affect the outcome of the trial. *Bruske v. Arnold* (1970), 44 Ill.2d 132, 137, 138.

Plaintiff has not sustained his burden of proving that the verdict was clearly inadequate or rendered in a trial in which error intervened to improperly prejudice the jury. Therefore, the trial court's order denying a new trial in its entirety is affirmed.

Order affirmed.

DAVIS, P. J. and MORAN, J., concur.