ROBERT WINSOR, Plaintiff-Appellee, *v.* THE BALTIMORE & OHIO RAILROAD COMPANY, Defendant-Appellant.—(UNITED STATES INDUSTRIAL CHEMICALS CO., Defendant-Appellee.)

Fourth District   No. 16065

Opinion filed December 30, 1980.

GREEN, J., dissenting.

438

Nichols, Jones, McCown & Lincoln, of Tuscola (Harrison J. McCown, of counsel), for appellant.

Harlan Heller, of Harlan Heller, Ltd., of Mattoon, for appellee Robert Winsor.

William A. Sunderman, of Jack Anderson Law Firm, of Charleston, for appellee United States Industrial Chemicals Co.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant Railroad appeals from a judgment upon jury verdict awarding plaintiff $42,000 for personal injuries and property damage. Plaintiff does not appeal from a judgment entered upon the verdict in favor of the Chemical Corporation.

The collision occurred in Douglas County on the United States Industrial Chemicals Co. (U.S.I.) plant property. Interplant Road No. 2, a paved road, runs in a generally north-south direction within the plant. Interplant Road No. 2 is intersected by various railroad tracks which run in an east-west direction through the plant including a track called the B&O main line. As one drives south on Interplant Road No. 2, one first crosses three parallel sets of railroad tracks which lay close together. The three tracks, from north to south, are referred to as the elevator track, the B&O main line and the A track. At a point 95 feet south of the A track, the propane lead track intersects Interplant Road No. 2. It was at the intersection of Interplant Road No. 2 and the propane lead track that the accident in the instant case occurred.

Defendant presents three issues for review. It contends that (1) plaintiff was contributorily negligent as a matter of law, (2) the trial court committed reversible error in refusing to instruct the jury with an instruction which would have permitted the jury to consider plaintiff's alleged violation of a statute, and (3) the trial court committed reversible error in refusing to instruct the jury that plaintiff had a duty to stop at the railroad crossing in question.

Plaintiff testified: On March 21, 1975, he drove his semi-trailer to the U.S.I. plant where he picked up a tank filled with anhydrous ammonia. The sun had set; it was still light outside but rather hazy as plaintiff left the ammonia loading area and drove south on Interplant Road No. 2. Plaintiff stopped his semi-trailer on the north side of the B&O main line, observed no trains approaching, put his truck in "gear low, low" and slowly crossed the three sets of parallel tracks. Plaintiff had his driver's side window down, but heard nothing. As he traveled from the three tracks to the

propane lead he remained in low, low gear. The propane lead was not marked with a stop sign in the direction in which plaintiff was driving. When plaintiff reached the propane lead, he looked in both directions, did not see or hear any moving train, and started across the propane lead. Plaintiff continued to look and listen as he crossed the propane lead but heard no horn or whistle sound or any bell ring. After the tractor crossed the propane lead and almost all of the ammonia tank was across the tracks, plaintiff heard a bang. He stated that he did not see the train at any time before it hit him, nor did he at any time hear a bell or whistle. Plaintiff did, however, state that the train did not stop prior to crossing the intersection. The collision caused the tractor trailer to go over onto its side and cause the train to derail after having come to a halt 150 feet east of the crossing.

George Wineland, a fire marshall employed by U.S.I., arrived at the scene shortly after the collision. He testified to the plaintiff's theoretical view at the time of the collision. His testimony is somewhat confused by the fact that he was referring to a diagram and did not specify the name of the particular tracks to which he was referring, as will be discussed in greater detail shortly. Wineland stated that a person traveling south on Interplant Road No. 2, after stopping at the stop sign south of the A track (95 feet north of the propane lead) had an unobstructed view of the propane lead track. This testimony was corroborated by Michael Corwin, one of the crewmen on the train. Wineland also stated that at the time of the collision there was a coal car on one of the tracks, 300 to 400 feet east of the intersection involved in the collision.

At trial, "Safety Rules for the Guidance of Baltimore & Ohio Railroad Employees General Notice" was introduced into evidence. That notice stated in part:

> "Due to the highly flammable qualities of the commodities handled by the U.S. Industrial Chemicals Plant, Ficklin, Illinois, the rules contained herein must be strictly adhered to. * * * Engine bell shall be kept ringing at all times while engine is in motion within the plant. Engines and trains shall stop at all crossings and proceed only when crossing is protected by a member of the crew."

Plaintiff first became aware of the plant safety rules long before the accident when he was a fireman for the city of Tuscola. B&O also made several admissions which were read to the jury at trial. It admitted that there were no stop signs, cross arms or any other warning devices or signs for a distance of at least 50 feet immediately north of the site of the collision. Further, there were no electric signal devices in the vicinity of the collision which could be activated automatically by a train when it

approached the crossing. B&O further admitted that it provided no flagman at the site of the collision to warn or advise users of Interplant Road No. 2 about the presence of nearby trains.

Four men constituted the crew of the train involved in the accident: Michael Corwin, the field man, Charles Johantgen, the conductor, William Shaw, the engineer, and Richard Oyler, the brakeman. All four testified on behalf of B&O to substantially the same testimony. Prior to the accident, the four men went on the train to the propane tracks at the U.S.I. plant in order for the train's tank cars to be filled with liquid propane gas. After the cars were filled, the train proceeded east on the propane lead tracks at a speed of approximately 5 to 8 miles per hour. The weather was clear and it was still light at the time of the accident. As the train approached the crossing at Interplant Road No. 2, on the propane lead traveling east, all of the crewmen heard, and the engineer testified, that he blew the whistle in the standard signal for road crossings. All four acknowledged that B&O rules require the train to stop at Interplant Road No. 2, and that the rules required a member of the crew to flag the crossing before the train proceeded. All admitted that the train did not stop at Interplant Road No. 2 and that no one flagged the crossing in this particular instance. All members of the crew were on the right-hand side of the train, opposite from the side of the train which plaintiff was approaching. Engineer Shaw stated that as the train approached Interplant Road No. 2 its headlight was on and the bell of the train was ringing. He saw plaintiff's tractor just seconds prior to the collision, and put on an independent brake valve at that time. Shaw admitted that he did not sound the bell or the whistle until four or five car lengths before reaching the crossing.

Don Rhodes, a maintenance supervisor at U.S.I., testified that access to the plant is limited, that not everyone could come into the U.S.I. plant at will, and that Interplant Road No. 2 is a private road.

At the close of plaintiff's case, both defendants moved for directed verdicts and the trial court denied both motions. At the close of all the evidence, both defendants renewed their motions for directed verdicts which the court again denied. The jury returned a verdict finding for plaintiff and against defendant B&O, assessing the plaintiff's damages in the sum of $42,000. The jury also found in favor of defendant U.S.I. and against the plaintiff. The trial court entered judgment on the verdicts and denied B & O's post-trial motion.

■■ B&O first argues that plaintiff was contributorily negligent as a matter of law and therefore the trial court erred in denying their motions for a directed verdict. B&O bases its position on the testimony which it claims establishes that plaintiff did not see the oncoming train, although he had an unobstructed view of it, did not hear the train, although the bell

was ringing, and did not stop before crossing the track despite the known danger involved. Our review of the evidence indicates that the evidence of contributory negligence, when viewed in its aspect most favorable to the plaintiff, does not so overwhelmingly establish plaintiff's negligence that no verdict finding him free from contributory negligence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

B&O's principal contention is that plaintiff had an unobstructed view of the propane lead track from Interplant Road No. 2 and should have, in the exercise of ordinary care, seen the oncoming train. Had that been the evidence, the law supports B&O's position.

> "The law casts disfavor on the person who claims that upon approaching an unobstructed crossing he looked but did not see an oncoming train. However, the law readily acknowledges that if a crossing is obstructed, a person, diligently using the senses of sight and hearing and exercising the ordinary care expected under the circumstances, might be excused for failing to perceive that the train was approaching. * * * Generally, in those cases in which a crossing is obscured, whether a plaintiff exercised due care and whether the obstruction prevented the plaintiff from perceiving an oncoming train are questions of fact for the jury and not matters of law which would require the court to intervene." *National Bank of Bloomington v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 169, 383 N.E.2d 919, 922.

In the instant case, the testimony regarding the obstruction of plaintiff's view is unclear and confusing. The source of the confusion is plaintiff's exhibit No. 3, a plat of the U.S.I. Plant, which was introduced into evidence. Exchanges occurred between counsel and witness in which each would point to the plat without verbalizing the specific track or area to which they were referring. In the testimony of George Wineland, relied on by defendant to support its contention that no obstruction existed, Wineland pointed to the spur track, and acknowledged that coal cars were sitting on that track 300 to 400 feet east of the intersection at the time of the collision. The following exchange then occurred:

> "Q. Were there any cars on this track?
>
> A. There was one. No, not on that track.
>
> Q. Was there a car on this track?
>
> A. Yes, coal car.
>
> Q. And approximately how many feet was that coal car east of this intersection, if you know?
>
> A. Would be a guess, I would say three or four hundred feet.
>
> Q. Were there cars on the A Track Mr. McCown asked you about?

A. No there was not.

Q. I assume there were no trains moving on the main line track?

A. No."

It is impossible from this testimony to determine exactly where the coal cars were and whether they constituted an obstruction. Plaintiff's testimony is equally unclear. After plaintiff testified that empty coal cars sitting on the spur track obscured his view, the following colloquy occurred on cross-examination:

"Q. As you approached—as you went past the main there, what blocked your view, if anything, from just south of the main all along the propane lead?

A. There were empty cars setting on the siding. There is a little side track there from the propane lead.

Q. You are talking about this track here, are you not, that leads off to the northwest?

A. Yes, sir.

Q. What is between, though, the road here and all along there?

A. There was a curve in the track.

Q. What are the obstructions, sir?

A. None.

Q. There are none there now and there were none then, isn't that correct?

A. Yes, sir."

Thus, based on the record before this court, whether the obstruction actually obscured the crossing and whether it prevented plaintiff from perceiving the oncoming train were clearly jury questions, as only the jury had the opportunity to see the witnesses point to the plat as they testified.

■■ B&O additionally contends the plaintiff was contributorily negligent as a matter of law because he did not hear the bell which was ringing, which proves that he negligently failed to listen when approaching the crossing. The plaintiff testified that no bells were sounding; the crewmen testified to the contrary. No independent witness testified to corroborate either side. The question was one of witness credibility, and it was properly left for the jury to determine.

■■ B&O finally contends that plaintiff was contributorily negligent in that he failed to stop before crossing the propane lead track. In general, a person is not required to stop before traversing a railroad crossing, even one which is obstructed. (*National Bank of Bloomington.*) Defendant bases its argument that plaintiff in this case had a duty to stop upon a statute which requires drivers of trucks carrying flammable liquids to stop at railroad crossings. The second issue raised by B&O on appeal also concerns this statute. B&O tendered a jury instruction based on the statute which stated:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that the driver of any vehicle carrying flammable or oxidizing liquids, volatile liquids, which emit poisonous fumes or corrosive liquids as a cargo or part of a cargo, before crossing at grade any track or tracks of a railroad, shall stop such vehicle within 50 feet but not less than 15 feet from the nearest rail of such railroad and while so stopped shall listen and look in both directions along such track for any approaching train, and for signals indicating the approach of a train, and shall not proceed until he can do so safely.

If you decide that the plaintiff, Robert Winsor, violated the statute on the occasion in question, then you may consider that fact, together with all the other facts and circumstances in evidence, in determining whether or not he was contributorily negligent before and at the time of the occurrence."

■■ Plaintiff objected to the jury instruction, arguing that the statute only applies to public highways and did not apply to the road in question, which was a private road. The uncontradicted testimony of Mr. Rhodes established that Interplant Road No. 2 was a private road. The trial court refused the instruction by reason of the decision in *Couillard v. Elgin, Joliet & Eastern Ry. Co.* (1974), 21 Ill. App. 3d 914, 316 N.E.2d 541, which defendant argues is erroneous. The trial court was correct. In *Couillard*, an accident occurred between a tractor-trailer and a train on private property. At trial, defendant submitted a jury instruction regarding plaintiff's duty to stop prior to crossing railroad tracks based upon a statute (Ill. Rev. Stat. 1965, ch. 95½, par. 181) which, for the purposes of the instant case, is virtually identical to the statute B&O desired the jury to consider (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1202). In determining that the instruction did not apply to private property, the court, in *Couillard* relied on two statutes which, construed together, logically lead to the result reached. Section 11—201 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—201) provides that the provisions of the Rules of the Road apply exclusively to the operation of vehicles on highways unless a different place is specifically referred to in the statute. In the instant case, the statute requiring drivers of vehicles carrying flammable liquids to stop before crossing railroad tracks makes no such specific reference and thus applies only to highways. The word "highways" is defined in the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—100) as:

"The entire width between boundary lines of every way or place of whatever nature when any part thereof is open to the use of the public as a matter of right for purposes of vehicular traffic."

Based upon these two statutes, we find, as the court found in

*Couillard*, that the statute did not apply to private property and therefore, did not apply to the plaintiff.

B&O argues that this court should not follow *Couillard* based on policy grounds, specifically urging that the policy aim of the statute, to protect persons from explosions resulting from collisions between trains and trucks carrying flammable liquids, supports extension of the statutory language to cover private property. There is a countervailing policy involved however, and it is embodied in section 11—210 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—210):

> "This Chapter [is] not to interfere with rights of owners of real property with reference thereto. Nothing in this Chapter shall be construed to prevent the owner of real property used by the public for purposes of vehicular travel by permission of the owner and not as a matter of right from prohibiting such use, or from requiring other or different or additional conditions than those specified in this Chapter, or otherwise regulating such use as may seem best to such owner."

In the instant case, the property owner and the railroad had adopted specific rules to be followed by railroad personnel within the plant. The rules required greater precautions to be taken by train personnel at train crossings within the plant than would be required at crossings of public highways, which further supports the inapplicability of the Illinois Vehicle Code to the case, as logically plaintiff's duty would be altered by defendant's assumption of increased precautionary measures. In sum, we find that plaintiff was neither contributorily negligent as a matter of law for failing to comply with section 11—1202 of the Illinois Vehicle Code, nor did the court err in refusing to instruct the jury to consider whether plaintiff's failure to comply with that statute constituted contributory negligence.

B&O's final contention on appeal is that the trial court erred in refusing to give another instruction tendered by it, Illinois Pattern Jury Instructions, Civil, No. 73.01 (2d ed. 1971) (hereinafter IPI), which was first tendered verbatim and then, upon objection by plaintiff, was modified to read:

> "A railroad crossing is a place of danger. If you believe from the evidence that as the plaintiff was approaching the crossing he knew, or, in the exercise of ordinary care should have known, that a train approaching the crossing was so close to the crossing that it would be likely to arrive at the crossing at about the same time as the plaintiff's vehicle, then it was the duty of the plaintiff to [stop]."

Plaintiff again objected, and the trial court sustained the objection.

Defendant asserts that it was entitled to the foregoing instruction on plaintiff's duty of care and was prejudiced by refusal of the instruction as the jury had been told of defendant's obligation under the applicable plant safety rules. Defendant accurately states that, although the safety rules required the train to stop at the crossing, the plaintiff was not relieved of his duty to look and listen for an oncoming train. (*Applegate v. Chicago & North Western Ry. Co.* (1948), 334 Ill. App. 141, 78 N.E.2d 793.) But the instruction tendered did not so instruct the jury. The plaintiff's duty in this case was to stop at the crossing only if he realized that defendant was not going to abide by its duty to stop. Thus, the IPI instruction tendered, which was applicable to the usual crossing situation where the train has no duty to stop, would have been improper and misleading under the facts of the instant case and was properly refused by the trial court.

For the foregoing reasons, the judgment of the circuit court of Coles County is affirmed.

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE GREEN, dissenting:

I consider plaintiff's testimony to clearly indicate that any railroad cars standing west of the propane lead track crossing were on the spur running in a northwesterly direction from the propane lead track. Plaintiff's exhibit No. 3 showed that from the area on Interstate Road No. 2, just north of the crossing, the view down the propane lead track to the west would not have been obstructed by any cars that might have been on the spur. The train striking plaintiff's vehicle came from the west. Any obstruction 300 to 400 feet east of the crossing would not have obstructed the view to the west.

I agree with the majority's interpretation of the law. Under my interpretation of the evidence, plaintiff was contributorily negligent as a matter of law. For that reason, I would reverse.