**Ronay's Famous Shoes, Inc. and Max Fineburg v. Stuart St. Peter and Patricia St. Peter**

[465 A.2d 1388]

No. 82-513

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed September 6, 1983

*John J. Welch, Jr.*, Rutland, for Plaintiffs-Appellees.

*J. Fred Carbine, Jr.*, and *Edward R. Seager*, Rutland, for Defendants-Appellants.

**Gibson, J.** This is a landlord-tenant action sounding in negligence. The landlords, Stuart and Patricia St. Peter, appeal from a jury award of $20,000 to their tenant. They raise only one issue in their appeal: whether the trial court erred in refusing to grant a mistrial as a matter of law after the possibility of insurance coverage was injected into the case. We hold that the court did not err and, therefore, we affirm.

Ronay's Famous Shoes, Inc. (Ronay's) was the first-floor tenant of defendants' four-story building in downtown Rutland. On December 23, 1979, Ronay's was flooded by water pouring from a broken sprinkler head on a segment of the cen-

tral sprinkler system. Ronay's negligence claim was premised on evidence that defendants did not properly secure the upper floors of their building. As a result, they contend, someone was able to break in by climbing up the fire escape; once inside, the vandal apparently broke a sprinkler head on the fourth floor. Defendants presented evidence that they had earlier drained and shut down the sprinkler system, that refilling the pipes with water could only be accomplished by use of controls located in the basement, and that Ronay's had sole control of the basement. The jury found in favor of Ronay's, and its factual determination is not now challenged.

Defendants' contention on appeal is that the specter of insurance coverage was injected into the trial by Ronay's on two separate occasions: once when Ronay's attorney asked an allegedly prejudicial question about fire insurance, and again when plaintiff, owner of Ronay's, mentioned "adjustment people" in response to a question by the landlords' attorney. We take these claimed errors in order, but first review the law relative to the mention of insurance.

■■ This Court has held that "[t]he deliberate injection of insurance into a case in order to prejudice a jury and benefit a litigant is normally reversible error since the existence of insurance is an immaterial fact, *Bliss* v. *Moore,* 112 Vt. 185, 188, 22 A.2d 315, 317 (1941), and in proper circumstances fundamental fairness requires a new trial." *Cone Realty Corp.* v. *Smith,* 137 Vt. 567, 568, 409 A.2d 567, 568 (1979). However, Vermont courts have also long recognized that granting a mistrial is a drastic remedy and that in the proper circumstances a judge may properly decline to grant a mistrial as a matter of discretion when "the posture of the case makes it apparent that the prejudicial effect [of the existence of liability insurance] will be minimal." *Joslin* v. *Griffith,* 125 Vt. 104, 106–07, 211 A.2d 249, 251 (1965). See also *Raymond's Admx.* v. *Rutland Railway, Light & Power Co.,* 90 Vt. 373, 377–78, 98 A. 909, 911 (1916) (testimony regarding liability insurance coverage may be admissible if relevant to important credibility concerns). Accord V.R.E. 411. Thus, we proceed to analysis of defendants' claimed error on the assumption that the rule against admission of liability coverage on the issue of

negligence enjoys continued vitality, notwithstanding the prevalence of insurance coverage in the 1980's.

## I.

Plaintiff, during its case-in-chief, called as a witness the Rutland fire chief who had been personally involved in inspecting defendants' building shortly after the flood. The fire chief testified about the operation of the water sprinkler system and opined that no fire had occurred and that the water damage came from sprinkler heads inexplicibly found to be "open" in a room on the fourth floor. On cross-examination, defendants sought to establish that the chief had some knowledge that the sprinkler system was turned off in October of 1979, almost three months prior to the flood. However, the chief merely testified that defendants had told him that it was shut off.

Defendants' contention was that since the master control valves for the system were in the basement and under Ronay's exclusive control, and if defendants turned off the system in October and it somehow was reactivated by December 23, then Ronay's must have been responsible. The tenant denied turning the system back on and cast doubt on defendants' story that it was in fact ever shut down. In this regard, counsel for Ronay's, on redirect examination of the fire chief, asked the following question: "Now, are you familiar with fire insurance requirements?" Defendants objected, whereupon plaintiff made, in the presence of the jury, what amounted to an offer of proof:

> I think I have got a very legitimate question based on a representation made by you on cross [examination] that this system is closed [i.e. shut off]. I think we have a right to get into increased premiums on the basis of ascertaining whether anybody else was notified that it was shut off. . . .

The court disallowed further development of that line of questioning. However, it is clear from the record that the question to the chief was focused on the reliability and credibility of the landlords' position that the sprinkler system was turned off. To the extent that fire insurance premiums may increase

when the water sprinkler system is nonfunctional, any reliable information that the chief had regarding changes in fire coverage would be probative. As already noted, this line of questioning was not developed; thus, on appeal, we are able to assess only the reference to fire insurance and the subsequent offer.

Not only did the claimed error go to an admissible purpose, the reliability and credibility of the inferences suggested by defendants' cross-examination of the chief, but the reference was also to fire insurance. This was a negligence action based on flooding; no fire occurred and coverage for fire was never an issue. We therefore hold that under these circumstances reference to fire insurance did not prejudice defendants. *Joslin* v. *Griffith, supra,* 125 Vt. at 106–07, 211 A.2d at 251.

## II.

The second claimed error occurred much later in the trial in the context of a discussion about the losses suffered by Ronay's. Plaintiff was on the stand testifying about exhibits purported to verify and tabulate his losses. Defense counsel was permitted to conduct a limited cross-examination on the exhibits prior to their admission into evidence. One of the questions he asked was whether the inventory was made with the assistance of "an independent shoe store representative." Plaintiff responded that the appraisal was made through the "Grant people," and in response to a more searching question, added that Mr. Grant prepared the master sheet which summarized an eighty-nine page inventory list. Defendant did not object to the responses he was receiving to his questions, and continued his inquiry into the method used for inventory valuation. After a series of questions, defendant agreed to the admission of the inventory.

Plaintiff's counsel was then allowed to proceed with his direct examination, and it began to appear that $45,000 was the total loss of inventory. By way of summarizing the testimony, plaintiff's counsel asked whether that figure "represents the aggregate damage to all the shoes as appraised by you, is that correct?" Plaintiff responded: "Appraised by me and agreed by the adjustment people."

■ Defense counsel then asked for a bench conference wherein he renewed his motion for a mistrial which the court eventually denied. Even assuming that plaintiff's answer was responsive to the question, no error appears from the trial court ruling. In *Cone Realty Corp.* v. *Smith, supra,* 137 Vt. at 568, 409 A.2d at 569, this Court held that a party cannot claim error when he knows or should have known that a truthful response to his own question will elicit the mention of an insurance adjuster. Such is the case at bar, where the preceding cross-examination of plaintiff by defendant had revealed the participation of the "Grant people" in the inventory preparation. Defense counsel was aware that the reference to the Grant people meant that the Grant Adjustment Agency had assisted Ronay's.

■ Even assuming the jury understood the oblique reference to "Mr. Grant" and connected it with the later reference to "the adjustment people," prejudice resulting therefrom requiring a mistrial simply has not been shown. See *Joslin* v. *Griffith, supra,* 125 Vt. at 107, 211 A.2d at 251 (mistrial not justified by inference of insurance coverage that the jury might have drawn from trial testimony).

■ Finally, we note that, in point of fact, defendants did not carry liability insurance for this type of loss. When the motion for a mistrial was again renewed in chambers, it was based on the potential for jury speculation about defendants' coverage and a correspondingly disproportionate award. Plaintiff offered to agree to an instruction that defendants did not have any insurance to cover the flooding damage. The trial court agreed to give the instruction, but defendants refused to go along with the plan, insisting on the right to a mistrial. Under these circumstances, where prejudice, if any, was attenuated, the curative instruction was appropriate. In refusing the court's offer, defendants cannot now be heard to complain of prejudice and reversible error.

*Judgment affirmed.*