WALLACE G. FERRY, Plaintiff-Appellee, v. CHECKER TAXI COMPANY, INC., Defendant-Appellant.

First District (1st Division) No. 86—3429

Opinion filed December 28, 1987.

Jesmer & Harris, of Chicago (Allen L. Wiederer, of counsel), for appellant.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, and Robert J. Bingle, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Initially, plaintiff Wallace G. Ferry (Ferry) filed a complaint against the defendant, Checker Taxi Company, Inc. (Checker), seeking damages for personal injuries he received while he was a passenger in Checker's cab. Plaintiff later filed an amended complaint against Checker to specifically allege negligent operation of the cab in count I, negligent failure to obtain information concerning the identity of the driver of the vehicle which struck the cab in count II, and wilful and wanton failure to obtain such information in count III. Defendant Checker moved to dismiss counts II and III for failure to state a cause of action. In ruling on Checker's motion, the trial court dismissed count III for failure to state a cause of action, but found that count II did state a cause of action. The case went to trial in the circuit court of Cook County on counts I and II. At the close of the evidence, the trial court entered a directed verdict for the defendant on count II. Thereafter, the jury returned a general verdict for plaintiff in the amount of $80,000 on count I, and the trial judge entered judgment on the verdict. Checker now appeals that judgment as well as the trial court's denial of its previous motion to dismiss count II of the complaint for failure to state a cause of action.

On March 14, 1977, the plaintiff, Wallace Ferry, a Florida resident, arrived at Chicago O'Hare International Airport to attend a convention. Upon his arrival at O'Hare, Ferry met another representative from his company, Mr. Piqueras, and together they took a

Checker taxicab from O'Hare to Ferry's hotel, located in downtown Chicago. While in route to the hotel on the Kennedy Expressway, traveling southeast, the cab driver pulled quickly into the left lane of traffic and then hit his brakes suddenly. The vehicle behind the cab hit the cab from the rear. It was this impact that allegedly caused Ferry's injuries to his neck and aggravated a disorder in his back. The cab driver stopped, got out of the cab, went to the back of the cab, returned approximately one minute later, and drove off. Ferry saw that the other car was damaged but could not discern the make, model, or license plate of the other car. As the cab drove off, Ferry, since he was hurt, asked the cab driver for information as to the other car, but the cab driver did not respond and continued driving. When the cab got to Ferry's hotel, the only information Ferry could obtain from the cab driver was the Checker cab number. Ferry contacted both the police and Checker to report the incident. The next day, a Checker representative came to Ferry's hotel and took a short statement from both Ferry and Piqueras.

Thereafter, on May 5, 1978, plaintiff filed his two-count complaint, which, as stated before, was later amended to include three counts. As noted, count III was dismissed by the trial court for failure to state a cause of action, but counts I and II proceeded to trial.

The case was tried in the circuit court of Cook County, before a jury on May 8, 1986. Prior to trial, the court granted a motion *in limine* by the plaintiff which precluded the introduction of that portion of Ferry's statement taken by the Checker representative the day after the accident, in which Ferry blamed the other driver for the accident. At the end of the trial, during closing arguments, plaintiff's counsel, in his argument to the jury, specifically referred to Checker's lack of evidence, Checker's burden of proof, Checker's insurance claims adjuster, a *per diem* verdict approach, proximate cause or lack thereof, and the criminal standard of proof.

Both sides tendered instructions to the trial court, which included the contested instructions in this appeal, *i.e.*, the instruction by Ferry which dealt with the cab driver's failure to keep a proper lookout, and the instruction by Checker which authorized the jury to consider inconsistencies between Ferry's conduct after the accident and his claims in this case. As noted previously, Ferry's instruction concerning the failure to keep a proper lookout was tendered to the jury, but Checker's instruction concerning Ferry's inconsistent conduct was not tendered to the jury.

Prior to sending the case to the jury, the trial court, as stated before, entered a directed verdict for Checker on count II, and the jury

returned a general verdict for $80,000 in favor of the plaintiff, Ferry, on count I. Defense counsel requested and was permitted to poll the jury after the verdict was read and when one juror, Mrs. Zibrat, expressed some doubt as to the verdict, the trial judge took over and proceeded to conduct the poll of the jury. The trial judge then asked every juror, "Was it your verdict then in the jury room and is it your verdict now?" All jurors responded in the affirmative, including Mrs. Zibrat, who verbally expressed no doubts when queried by the judge. No further questioning was allowed and the judge entered judgment on the verdict.

Defendant Checker raises six issues on appeal: (1) whether the trial court erred by prohibiting Checker from introducing into evidence Ferry's statement given the night of the accident, in which he ascribed responsibility for the accident to the driver of the other car; (2) whether the trial court erred when it refused to include within the instructions, as requested by Checker, language that would have allowed the jury to consider Ferry's conduct after the accident which Checker alleged was inconsistent with his claims; (3) whether Checker was deprived of a fair trial and/or prejudiced by Ferry's counsel's statements in closing argument in which comment was made concerning Checker's lack of evidence, Checker's burden of proof, Checker's insurance coverage, a *per diem* verdict calculation, proximate cause, and the criminal standard of proof; (4) whether the trial judge properly polled the jury as requested by Checker's counsel; (5) whether the trial court erred by giving Ferry's requested instruction concerning Checker's driver's failure to keep a proper lookout; and (6) whether the trial court erred in denying Checker's motion to dismiss count II of the first amended complaint.

■■ We find no merit in Checker's first contention that the trial court should have been allowed to introduce into evidence Ferry's statement made to the representative after the accident, in which Ferry blamed the other driver for the accident. In disallowing the statement, the trial court properly relied on *Schall v. Forrest* (1977), 51 Ill. App. 3d 613, 366 N.E.2d 1111, and excluded the statement as an improper legal conclusion. In *Schall*, the court found that the statement, "I think Tipsword [*sic*] is mostly at fault," was a legal conclusion, not an admission, and therefore could not be admitted into evidence. The court stated that a party's reference to another person as being the one at fault is not an admission; rather, it is an improper expression on the ultimate issue of the case and an invasion on the province of the jury. *Schall*, 51 Ill. App. 3d 613, 366 N.E.2d 1111.

Checker argues that the trial court should have relied on an ab-

stract opinion, *Ingram v. Tucker* (1953), 350 Ill. App. 100, 111 N.E.2d 847, and a 1938 Oregon case, *Swain v. Oregon Motor Stages* (1938), 160 Or. 1, 82 P.2d 1084. We disagree. *Schall* is clearly the controlling case. Ferry's statement placing the blame on the other driver was a legal conclusion, just as was the statement in *Schall*, and, as such, properly inadmissible as a legal conclusion.

■■ ■ Issues two and five both deal with jury instructions. Checker contends that error occurred when the trial court: (1) refused to give Checker's instruction concerning Ferry's alleged inconsistent conduct; and (2) gave Ferry's instruction concerning the driver's failure to keep a proper lookout. A trial court, however, has discretion in giving an instruction, and the refusal to give an instruction must create undue prejudice before a new trial is required. (*In re Estate of Loesch* (1985), 134 Ill. App. 3d 766, 771, 481 N.E.2d 32, 36.) Moreover, although a party has a right to have a jury instructed on his or her theory, if there is sufficient evidence for the instruction, it is reversible error for a court to instruct a jury on an issue that is unsupported by evidence. 134 Ill. App. 3d at 771, 481 N.E.2d at 36, citing *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 709, 444 N.E.2d 498, 503, *appeal denied* (1983), 94 Ill. 2d 552.

In the case at bar, Checker's instruction, which the court refused to give, read, "[t]he credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement or acted in a manner inconsistent with the testimony of the witness in this case on a matter material to the issues." The court gave another instruction, however, which was exactly the same as the above instruction, except that the words "or acted in a manner" were not included. Checker contends that the instruction which included the reference to inconsistent acts had a basis in the evidence presented, since the evidence at trial showed that Ferry did not seek medical attention for the week following his accident while in Chicago, and after returning to Florida, he only allegedly made infrequent visits to his Florida doctor. Ferry, on the contrary, contends that the evidence at trial did not establish that he acted in a manner inconsistent with his claims, because he did miss work during that week in Chicago due to his injuries, he did not see a doctor in Chicago only because he wanted to wait until he returned home to do so, and after he returned home he saw his own doctor in Florida as required.

■ We believe that the evidence here sufficiently supported Checker's theory and that, accordingly, the trial court was required to give Checker's tendered instruction on inconsistent behavior. Although we find that the trial court erred by not giving the requested

instruction, we do not find it to be prejudicial or reversible error, because the evidence presented at trial on inconsistent behavior was fully presented to the jury, Checker's counsel explained his theory to the jurors in argument, and there was no other instruction given which precluded the jury from considering that evidence.

Consequently, we find the instruction requested by Ferry and given by the trial court regarding the cab driver's failure to keep a proper lookout was properly given. Ferry's testimony clearly provided sufficient evidence to support this theory. Ferry testified that the cab quickly changed lanes and then stopped suddenly on the expressway. The instruction was supported by the evidence, and, hence, the trial court properly tendered this instruction to the jury.

The third issue raised by Checker concerns a number of alleged errors made by the trial court during closing argument by Ferry's counsel. The alleged improper arguments made by Ferry's counsel are his references to: Checker's lack of evidence; Checker's burden of proof; Checker's claims adjustor; a *per diem* rate of damages; proximate cause; and the criminal standard of proof. However, before a reviewing court will reverse a judgment based on errors in closing argument, those errors must be clearly improper and prejudicial. *Boasiako v. Checker Taxi Co.* (1986), 140 Ill. App. 3d 210, 214, 488 N.E.2d 672, 675.

Here, Checker alleges error in Ferry's counsel's reference to Checker's lack of evidence and its failure to call certain witnesses; namely, the cab driver. A similar situation arose in *Couillard v. Elgin, Joliet & Eastern Ry. Co.* (1974), 21 Ill. App. 3d 914, 316 N.E.2d 541. There this court found that reference to absent witnesses was improper in that nothing in the record showed that the missing defense witnesses were under the defendant's control at the time of trial or that plaintiff could not have subpoenaed them. Furthermore, the defendant had claimed that those witnesses were no longer in their employ. However, even though the court found that the reference was improper, it was not prejudicial since it was only a small part of the argument and no instruction was given to compound the problem. Here, again, while the reference was improper, it clearly was not prejudicial since it was only a small part of the argument and plaintiff's counsel himself even told the jury that the driver was no longer in defendant's employ. No prejudice resulted which would require reversal.

Checker next contends that opposing counsel suggested that Checker had a burden of proof in this case since counsel referred to Checker's lack of independent evidence. In a negligence action, the

burden is on the plaintiff to prove negligence, not on the defendant to disprove it. (*Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 162-63, 392 N.E.2d 183, 186.) The burden of proof, however, encompasses different aspects: the burden of going forward with evidence and the burden of persuading the jury as to the existence or the nonexistence of the fact asserted. (*Board of Trade v. Dow Jones & Co.* (1982), 108 Ill. App. 3d 681, 686, 439 N.E.2d 526, 530, aff'd (1983), 98 Ill. 2d 109, 456 N.E.2d 84.) Of course, the burden of proof may shift during the course of the trial. In this case, Ferry's counsel never told the jury that Checker had the burden of proof, but instead told them that he retained the burden of proof. Counsel merely made a reference to the fact that Checker's counsel was attempting to attack inferences he had drawn from the evidence, and Checker's counsel was further attempting to draw inferences of his own without the evidence to back it up. The comments were only made to attack Checker's counsel's basis for his argument and were, therefore, well within the scope afforded in proper closing argument. No prejudicial error occurred by reason of these remarks.

 ██ Ferry's counsel also made certain remarks referring to Checker's claims adjustor and Checker's failure to bring that adjustor in to testify. While reference to insurance is improper, it is not *per se* reversible error. Indeed, this court has specifically stated that the almost universal prevalence of automobile liability insurance, especially with regard to taxicab companies, has resulted in increased judicial tolerance towards references to insurance, and, accordingly, not all references to insurance will be reversible error. (*Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 256, 451 N.E.2d 1313, 1321.) Checker argues that the remarks by Ferry's counsel constituted reversible error since they suggested to the jury that Checker was covered by insurance for this claim. We disagree. Here, the reference to the Checker agent as a claims adjustor, which in fact he was, was improper, but it was not prejudicial since it was not stressed in the argument and, in any event, there was a complete basis in evidence for the finding of liability, and the award was reasonable. See *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 451 N.E.2d 1313.

 Checker next suggests that reversible error occurred when Ferry's counsel mentioned a *per diem* formula of damages. It is, of course, improper for a plaintiff's attorney to suggest a formula for the jury to use in calculating an award of damages for pain and suffering. (*Caley v. Manicke* (1962), 24 Ill. 2d 390, 182 N.E.2d 206.) It is clear though that our supreme court in *Caley* intended to prohibit the use of a particular mathematical formula and set of figures, from

which counsel could argue that the jury award a specific sum per day, or other fixed unit of time, for pain and suffering. Here, the exact words spoken by Ferry's counsel which Checker claims was a *per diem* formula, were:

> "It's easy to dissect the word disable. How does the jury go about it. Do you break it down in an hour or break it down in a day."

At that point, Checker's counsel objected and that objection was sustained.

No specific figures or formula were presented to the jury in this case. Furthermore, Ferry's counsel was stopped by the objection before any prejudicial error occurred. Hence, under these circumstances, any possible error caused by these remarks was not reversible error.

█■ Checker also contends that reversible error occurred in closing argument when Ferry's counsel stated that Checker's actions did not have to be the proximate cause of Ferry's injuries. Clearly a defendant can only be held liable for the "natural and probable" results of his actions, *i.e.*, all the consequences which an ordinary prudent person ought to have foreseen as likely to occur. (*Scott & Fetzer Co. v. Montgomery Ward* (1984), 129 Ill. App. 3d 1011, 473 N.E.2d 421, *aff'd* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022.) However, after reviewing the record here, it is clear that Ferry's counsel, in his remarks, only referred to the distinction between *the* proximate cause of an injury and *a* proximate cause of an injury, noting that Checker's actions need not have been the sole proximate cause of Ferry's injuries. This intention of plaintiff's counsel is substantiated by plaintiff's instruction, which was tendered and given by the trial court to the jury on that very issue. The instruction which the trial court gave concerning whether the defendant's actions were a proximate cause of the plaintiff's injuries is proper in cases where there is evidence, such as here, that actions of another contributed to the injury. (See *Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 751-52, 464 N.E.2d 866, 870. See also Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971).) Here, there was evidence that the actions of the other unknown driver may have contributed to Ferry's injuries, and thus, Checker's liability could be predicated on the fact that its actions were merely a proximate cause, not the sole proximate cause, of Ferry's injuries. These remarks did not constitute reversible error.

█■ Checker alleges one final error in Ferry's closing argument. It contends that plaintiff's counsel's reference to the criminal standard of proof, which he distinguished from the civil standard of proof, was error. The same type of alleged error arose in *Lounsbury v.*

*Yorro* (1984), 124 Ill. App. 3d 745, 464 N.E.2d 866, when counsel made similar reference to the criminal standard in order to distinguish it from the civil standard. The court there found that the statements, while legally correct, were wholly immaterial and confusing to the jury and, therefore, not proper. The *Lounsbury* court concluded, however, that the remarks were not prejudicial since the distinction was clearly explained through counsel himself and through the instructions given, and therefore did not amount to reversible error. Likewise here, Ferry's counsel's explanation of the distinction and the instructions given worked to negate any confusion; however, the remarks were not prejudicial and do not require reversal.

 Checker argues in its fourth issue for review that the trial judge improperly polled the jury. Checker contends that the trial court did not properly inquire of the jurors whether this was their verdict. The Illinois Supreme Court in *People v. Kellogg* (1979), 77 Ill. 2d 524, 528, 397 N.E.2d 835, 837, held that there was nothing wrong with asking jurors during the polling: "Was this then and is this now your verdict?" The court also stated that if any juror showed any expression of doubt in response, the trial judge must then ascertain the juror's present intent by allowing him or her to express disagreement. Error occurs when the juror is precluded from an opportunity to dissent or if the juror has not assented to the verdict. However, the trial judge must be careful not to make the polling process another arena for deliberations. 77 Ill. 2d at 529, 397 N.E.2d at 838.

 Here, when the trial judge asked juror Zibrat, "Was it your verdict in the jury room and is it your verdict now?" Zibrat answered "Yes." Under *Kellogg*, this is enough to preclude further questioning, especially in light of the fact that this affirmative answer occurred after her prior expression of doubt to counsel.

 Finally, Checker raises the issue of whether the trial court erred in allowing count II of the complaint to proceed to trial in light of its motion to dismiss for failure to state a claim upon which relief could be granted. The action here is a personal injury claim against a common carrier, Checker. Count II was a claim of negligence for the failure of the Checker driver to obtain information from the driver of the other vehicle involved in the collision. It is a general principle of negligence law that a common carrier owes its passengers the highest degree of care, consistent with the practical operation of its vehicles. (*Smith v. Chicago Limousine Service, Inc.* (1982), 109 Ill. App. 3d 755, 759, 441 N.E.2d 81, 84.) Nevertheless, a negligence cause of action must be based upon duty, breach, proximate cause and resulting damage. *Waite v. Chicago Transit Authority* (1987), 157 Ill. App.

3d 616, 510 N.E.2d 1176.

While this case does involve a common carrier, we do not agree with the trial court that a cause of action exists for the negligent failure to obtain information here, because we believe, under the circumstances, the proximate cause and the damage elements are simply too speculative in this type of action. However, while we find that the trial court erred in allowing this cause of action set forth in count II, the error did not amount to reversible error since a directed verdict was entered by the trial judge on count II in favor of the defendant, Checker.

Any errors in the trial of this case were not prejudicial to the defendant, Checker, and, as such, no reversible error occurred. For all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.