## Susanne Debus v. Grand Union Stores of Vermont

[621 A.2d 1288]

No. 92-063

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 29, 1993

*Peter M. Lawrence* of *Barr, Sternberg & Moss, P.C.*, Bennington, for Plaintiff-Appellee.

*Stephen J. Soule* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellant.

**Johnson, J.** Defendant Grand Union appeals from a jury verdict and award of personal injury damages made to plaintiff on her premises-liability claim. Defendant contends the trial court erred by allowing plaintiff to make a per diem damage argument to the jury, and claims that such arguments are overly prejudicial and should not be allowed. We disagree, and affirm. Defendant also appeals on five other grounds, which shall be taken in turn, each affirmed.

Plaintiff was injured while shopping at defendant's store on August 23, 1985, when a pallet of boxes, piled high and imbal-

anced, toppled over and fell upon her. The boxes, containing cans of pet food, tumbled off the pallet and onto plaintiff when a store clerk, engaged in routine shelf-restocking, attempted to move the overloaded pallet. Plaintiff suffered injuries resulting in a 20% permanent disability. The jury awarded plaintiff damages of $346,276.23.

## I.

During closing argument, plaintiff suggested that the jury think about plaintiff's injury in terms of daily pain and suffering, and then determine what amount of damages would be appropriate compensation for each day of suffering. An average daily figure was suggested to the jury, which it could then multiply by the number of days plaintiff would live, counting from the day of the accident until the end of her life expectancy, some thirty-five years. The jury was told to consider the figure only if it found the calculations useful in quantifying plaintiff's damages. Defendant contends that such per diem arguments are unduly prejudicial and should have been disallowed by the trial court. Defendant further contends that if per diem arguments are permissible, the court should give cautionary instructions.

A per diem argument is a tool of persuasion used by counsel to suggest to the jury how it can quantify damages based on the evidence of pain and suffering presented. See *Worsley v. Corcelli*, 377 A.2d 215, 219 (R.I. 1977). Other jurisdictions are divided as to whether to allow such arguments. Compare *Paducah Area Public Library v. Terry*, 655 S.W.2d 19, 25 (Ky. Ct. App. 1983) (allowing per diem argument), and *Cafferty v. Monson*, 360 N.W.2d 414, 417 (Minn. Ct. App. 1985) (same); with *Ferry v. Checker Taxi Co.*, 520 N.E.2d 733, 738 (Ill. App. Ct. 1987) (noting impropriety of per diem arguments), and *Botta v. Brunner*, 138 A.2d 713, 723–25 (N.J. 1958) (same). The principal reason advanced against per diem arguments is that a jury's verdict must be based on the evidence before it, and a per diem figure, which is not in evidence, allows the jury to calculate damages based solely on the argument of counsel. *Henne v. Balick*, 146 A.2d 394 (Del. 1958). Further, courts have reasoned that a per diem argument unfairly assumes that pain is constant, uniform, and continuous, and that the pain will prevail for

the rest of plaintiff's life. Therefore, it creates an "illusion of certainty" in a disability that is more likely to be subject to great variation. *Caley v. Manicke*, 182 N.E.2d 206, 208 (Ill. 1962); accord *Caylor v. Atchison, Topeka & Santa Fe Ry.*, 374 P.2d 53, 55–57 (Kan. 1962). Finally, some courts conclude that the jury will be too easily misled by the plaintiff's argument. See, e.g., *Botta*, 138 A.2d at 723–24.

On the other hand, jurisdictions that have allowed per diem arguments counter that sufficient safeguards exist in the adversarial system to overcome the objections to its use. They point out that a plaintiff's hypothesis on damages, even if presented on a per diem basis, must be reasonable or suffer serious and possibly fatal attack by opposing counsel; further, the notion that pain is constant and uniform may be easily rebutted by reference to the evidence or the jury's own experience. See *Worsley*, 377 A.2d at 219. Most importantly, they note that juries are entitled to draw inferences from the evidence before them and that the extent of damages attributable to pain and suffering is a permissible inference. *Id.*

■ After review of the arguments and authorities, we are persuaded that there is nothing inherently improper or prejudicial about per diem arguments if they are made under the ordinary supervision and control of the trial court. In cases where claims for pain and suffering are made, juries are forced to equate pain with damages. The jury can benefit by guidance offered by counsel in closing argument as to how they can construct that equation. *Id.* We permit counsel reasonable latitude in this phase of the trial to summarize the evidence, to persuade the jury to accept or reject a plaintiff's claim, and to award a specific lump sum. If a lump sum is to be suggested to the jury\*, it cannot be impermissible to explain how the lump sum was determined. See *Beagle v. Vasold*, 417 P.2d 673, 678, 53 Cal. Rptr. 129, 134 (1966).

---

\* Counsel's request that the jury award a lump sum amount is not error per se. *Scrizzi v. Baraw*, 127 Vt. 315, 321, 248 A.2d 725, 729–30 (1968); *Mattison v. Smalley*, 122 Vt. 113, 118, 165 A.2d 343, 347–48 (1960). Although the lump sum may be more consistent with counsel's hope than with the reality of the evidence, use of a lump sum, like a per diem damages argument, is not reversible error unless shown to be prejudicial.

■ Nor do we agree with defendant that per diem arguments must be accompanied by specific instructions. Juries are routinely instructed that arguments and suggestions by counsel are not evidence, whether or not a party makes a per diem argument. It may well be that other instructions may be required when per diem arguments are used, but we leave to the trial courts the fashioning of instructions and controls appropriate to the cases before them.

Our holding should not be taken to grant the plaintiff carte blanche to depart from any reasonable view of the evidence. Rather, it reflects our confidence that the defendant's opportunity to refute the plaintiff's closing argument will ensure that an absurd hypothesis will be rejected. Even if it is not, and a verdict is excessive, the trial court has adequate mechanisms, such as remittitur, to deal with it.

■ The question remains as to whether the per diem argument in the present case was improper. In closing argument, plaintiff's counsel told the jury the per diem figure was only a suggestion for its consideration, and that determining a fair amount would be entirely up to the jury. He did not argue that plaintiff's pain was constant, uniform, and easy to quantify on a daily basis. In fact, counsel told the jury that pain fluctuates and that he was only suggesting an average figure for their consideration, and told them to "[d]isregard it if it is not helpful." Defendant had a full opportunity to rebut the per diem argument and did so. We cannot conclude that this argument invaded the province of the jury.

The case was submitted to the jury with appropriate instructions. The trial court cautioned the jury that "the arguments of the attorneys and any statements which they made in their arguments or in their summation is not evidence and will not be considered by you as evidence," and that "it is your recollection of the witness's testimony and not the attorney's statements which shall control you in reaching your decision."

The court made it clear to the jury that the final determination of damages was to be made on the evidence alone and not on persuasive arguments for any particular formulas. That the jury was able to make this distinction between presented evidence and suggested formulas is demonstrated by their arriving at a total damages award $166,194 below the figure

suggested by plaintiff's counsel, which figure counsel calculated in part by using the per diem formula. There was no error.

## II.

Defendant also assigns two errors in the trial court's instructions on reducing future damages to present value. First, defendant claims that the instruction was not sufficiently detailed to permit an accurate calculation. Second, defendant contends the court erred in failing to take judicial notice of a financial table from American Jurisprudence 2d using a 12% per annum discount rate. Defendant wanted the court to give the table to the jury so it could calculate the reduction to present value.

The court's instructions to the jury were:

> Insofar as your award is for future damages, you should adjust to present worth such sum as you find is to be needed in the future so that the portion of the award for future damages, when prudently invested and saved, will match the compensation needs as they arise in the future.

Defendant's requested jury instructions were as follows:

> The plaintiff seeks an award for permanent pain and suffering and future medical expenses. Any such award should be reduced to its present value because of the fact that money awarded today can be invested so that it will be worth more at the time in the future for which the award was given. For example, $100 invested today at 12% interest will be worth $112 a year from now; so if $112 is needed one year from now, only $100 is required to be invested today.

Thus, the only difference was that defendant included an example with figures and a discount rate of 12%. In fact, the instruction was of the standard type long used in Vermont courts on reducing future awards to present value. See *Parker v. Roberts*, 99 Vt. 219, 224, 131 A. 21, 23 (1925).

■ For reversal, defendant must show that the charge was both erroneous and prejudicial. *Mobbs v. Central Vermont Ry.*, 155 Vt. 210, 218, 583 A.2d 566, 571 (1990). Not only was the instruction proper, but prejudice has not been shown. The jury awarded a lump sum to plaintiff in response to the court's inter-

rogatories, which did not require that the jury specify how they arrived at the total sum. Since the jury was not required to demonstrate its calculations, defendant cannot show to its detriment that the jury did not, in fact, follow the instructions on reducing future damages to present value.

■ Defendant also contends that the trial court should have taken judicial notice of an American Jurisprudence 2d financial table offered by defendant for use by the jury in calculating the reduction to present value using a 12% per annum rate. We find no error. The table offered by defendant was not in evidence, and no offer was ever made to admit it. Nor was there any evidence in the record on what the appropriate discount rate should be. Defendant simply argued that the legal rate of interest on judgments should also be the discount rate.

Defendant's reliance on cases taking judicial notice of prevailing interest rates, or selected interest rates announced on a specific date, is misplaced. Juries are generally aware of prevailing interest rates. If defendant wanted the jury to use a specific figure, it was required to lay a foundation for the use of that figure. Since defendant made no attempt to do so, the trial court did not err in refusing to instruct the jury to use the 12% table.

## III.

■ Defendant claims that the case should be remanded for a new trial because plaintiff deliberately elicited reference to insurance coverage from defendant's employee. The deliberate injection of insurance into a case when done to prejudice the jury mandates a new trial for reasons of "fundamental fairness." *Cone Realty Corp. v. Smith*, 137 Vt. 567, 568, 409 A.2d 567, 568 (1979). When the reference to insurance is irrelevant or merely inferential, however, or when the prejudicial effect of the reference is minimal, it is within the court's discretion to deny a mistrial. *Ronay's Famous Shoes, Inc. v. St. Peter*, 143 Vt. 319, 321, 465 A.2d 1388, 1389 (1983).

There is no indication in the record that plaintiff deliberately elicited testimony from defendant's employee that defendant was covered by insurance. In fact, defendant does not have insurance coverage. Defendant contends that plaintiff asked its

employee during a deposition why he filled out accident reports, and that part of the employee's response was that the reports were filled out for the insurance company. Defendant argues that by making the same inquiry in the same manner during direct examination of the employee, plaintiff was deliberately eliciting improper testimony. The record indicates, however, that a conference was held in chambers during which plaintiff's counsel refuted defendant's claim of deliberate injection, and the trial judge denied the motion for a mistrial. It was within the court's discretion to find it reasonable to expect defendant to advise its employee not to refer to insurance, especially when defendant was not insured.

■ Additionally, defendant has not shown that there was any prejudicial effect caused by the reference to insurance. Defendant claims prejudice is "readily apparent from the excessive verdict," which it attributes to the jury learning of insurance coverage. While the award is ample, we find this causal connection to be tenuous at best, and not supported by the record. The damages award as calculated by the jury was not, as a matter of law, excessive; it was less than what was asked for by plaintiff and does not suggest that the jury was blinded by the idea of a defendant insulated by insurance.

## IV.

Defendant argues that plaintiff's closing argument was improper in that counsel told the jury to treat defendant differently because it was a corporation. Defendant claims that because of the improper and prejudicial argument and the court's refusal to give a curative instruction, it is entitled to a new trial. We disagree.

■ Defendant makes no showing that plaintiff's closing argument had a prejudicial effect, nor can one be found in the record. Although plaintiff did argue that defendant is a corporation and should be held liable for its acts, albeit in a heavy-handed fashion, plaintiff did not ask the jury to treat defendant differently because of its corporate status. In addition, any reference to defendant being a corporation would not surprise the jurors due to defendant's high public profile. As there is no indication on the record that this was a false claim and that defend-

ant is not in fact a corporation, the mere mention of that status cannot be considered prejudicial. Therefore, the trial court did not abuse its discretion in refusing defendant a curative instruction. See *Ryken v. Blumer*, 307 N.W.2d 865, 869–70 (S.D. 1981) (trial court has discretion to determine whether curative instruction regarding corporate status is necessary).

## V.

Defendant further contends that the trial court erred by refusing to instruct the jury regarding a store owner's obligation to customers. Defendant relies upon *Dooley v. Economy Store, Inc.*, 109 Vt. 138, 194 A. 375 (1937), to assert that a store owner has a complete defense when the dangerous condition was open and obvious to the injured customer. *Id.* at 141, 194 A. at 377. The situation in *Dooley* was of a different nature from the one presently before us. *Dooley* concerned a customer's claim that she slipped on a defective step and if the store had installed railings, which it was under no obligation to do, she may have been able to stop her fall. The *Dooley* holding hinged upon the premise that the lack of a railing was clearly obvious to all customers, and that there was no evidence to reasonably show that a railing would have prevented the customer's fall or even lessened it. The claim was found to be too speculative to give rise to a duty in the store owner. We do not have the problem of a speculative claim before us in the present case.

Here, plaintiff was a business invitee to defendant's store. The conditions that defendant asserts plaintiff had a duty to avoid were caused by defendant and were in fact a part of defendant's regular business practice. As shipments came in, defendant's employees would, as part of their ordinary duties, load the boxes on pallets, bring the pallets to the aisles, and restock the shelves. The store would remain open during this process, and customers were encouraged to shop. There were no warnings to customers that shopping during restocking should be restricted, or that they should take extra care.

It was not plaintiff's duty to guard herself against defendant's routine business practice, but defendant's duty to protect plaintiff against a business practice that presented a danger to customers. *Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 393–94, 264 A.2d 796, 799 (1970). *Forcier* modified *Dooley* in

holding that it is the store owner's duty of active care to make sure that its premises are in safe and suitable condition for its customers. In *Forcier*, the business practice of using a self-serve method to sell loose produce gave rise to an increased duty of care on the defendant's part to remove floor debris because such debris is to be anticipated in a self-service operation. The resultant hazard to business invitees constituted a risk of harm within the reasonable foresight of the defendant. *Id.* at 394, 264 A.2d at 799.

Similarly, in the present case we are faced with a routine business practice that creates a hazard for defendant's customers. The risk of floor debris from an ordinary self-serve produce display is no greater than the risk of pallets loaded with heavy boxes waiting for shelf stocking throughout the aisles. Defendant cannot shift the burden of its routine business practice to the customers it encourages to enter its stores and whose attention it purposefully directs to the items along the shelves and not to cardboard boxes in the aisles.

The trial court's instructions reflected both the possibility of plaintiff's negligence under the *Dooley* standard, as defendant requested, as well as defendant's duty to its customers, and thus were not in error.

## VI.

Finally, defendant argues that because its motion for a new trial turned upon an examination of the evidence as a whole and involved the court's factual evaluation of the case, the assistant judges should have been involved in the ruling along with the presiding judge. We find this argument to be without merit. A judge's decision whether to grant a motion for a new trial involves mixed questions of both law and fact, which questions are to be decided by the presiding judge alone. 4 V.S.A. § 112(b).

*Affirmed.*

**Allen, C.J.,** dissenting. The majority reasons that if a lump sum award may be suggested to a jury, it cannot be impermissible to explain how the lump sum was determined. The difficulty with this rationale, however, is that, until today, it has been improper in Vermont to mention to the jury the lump sum

being sought. *Scrizzi v. Baraw,* 127 Vt. 315, 321, 248 A.2d 725, 729–30 (1968); *Mattison v. Smalley,* 122 Vt. 113, 118, 165 A.2d 343, 347–48 (1960). As stated in *Mattison,* the amount which the plaintiff hopes to recover is not evidence, proof of the amount due, or a standard for estimating the damages.

It is unnecessary here to set forth the various arguments in favor of or against per diem arguments as they have been thoroughly and exhaustively discussed in opinions from virtually every other jurisdiction over the past thirty years. See cases cited in Annotation, *Per Diem or Similar Mathematical Basis for Fixing Damages for Pain and Suffering,* 3 A.L.R.4th 940 (1981). I believe the better answer is to permit counsel to argue to the trier of fact the appropriateness of employing a time-unit calculation technique for fixing damages for pain and suffering, but to prohibit any suggestion by counsel of specific monetary amounts either on a lump sum or time-unit basis. This approach was suggested in *King v. Railway Express Agency,* 107 N.W.2d 509, 517 (N.D. 1961), and adopted by rule in New Jersey.* Rule 1:7-1(b), New Jersey Rules of Court.

The ultimate objective should be to aid the jury in determining what sum of money will reasonably compensate the plaintiff for the pain and suffering endured. The attainment of this goal is not enhanced by counsel arguing the dollar amounts that they desire to have a jury return. The fair and practical solution is to permit the jury to hear about the methodology and to apply its dollar amounts from the evidence rather than sums suggested in argument.

I further disagree with the majority in its reluctance to require a specific cautionary instruction, beyond the general language offered that "the arguments of the attorneys and any statements which they made in their arguments or in their summation [are] not in evidence and will not be considered by you as evidence." The instruction approved by the majority may be adequate to deal with remarks of an attorney that are plainly argumentative. The difficulty is that remarks regarding num-

---

* *In Botta v. Brunner,* 138 A.2d 713, 725 (N.J. 1958), the Supreme Court of New Jersey held that it was improper for counsel to suggest to the jury specific monetary amounts for pain and suffering per hour or day or week. The decision has been overruled in part by the rule.

bers or dollar amounts may not appear to be argument, but rather evidence itself. Hence, an instruction not to consider argument as evidence does not cure the problem.

As the Hawaii Supreme Court said in overruling an earlier case and allowing per diem arguments:

> With proper guidance by the trial judge the objections advanced in [an earlier holding] can be avoided and formula arguments can be usefully made by both sides. The trial judge should make it clear that the formula is just that, *argument*, and no more. He should emphasize that it is part of counsel's function as an advocate to persuade the jury and that formulas are but illustrations which serve only to focus the inquiry on the issue which the jury must ultimately resolve, the extent of money damages.

*Barretto v. Akau*, 463 P.2d 917, 923–24 (Haw. 1969) (citations omitted) (emphasis in original).

When a per diem argument is used,

> [t]he trial judge should tell the jury that they are not to be governed by the amount of damages suggested by counsel for whatever unit of time counsel employed, that this argument does not constitute evidence but is merely an approach to the damages issue which the jury may consider but need not adopt, and that the jury's ultimate obligation is to arrive at a lump sum amount which, in its view, is supported by the evidence and is fair and just to both the plaintiff and the defendant.

*Weeks v. Holsclaw*, 295 S.E.2d 596, 601 (N.C. 1982).

The majority relies on the proposition that "[i]n closing argument, plaintiff's counsel told the jury the per diem figure was only a suggestion for its consideration, and that determining a fair amount would be entirely up to the jury." The majority is overly generous. Counsel's remarks are at best ambiguous and come at the beginning of a lengthy and detailed mathematical presentation. That presentation, stated in part, follows:

> What award will it take to tell Grand Union what accountability means and that this is what the people in Bennington County think a human life and human suffering is worth[?]
>
> Now, let's just take one element. We have talked about pain and suffering. What would be fair compensation for

pain and suffering? *Entirely up to you.* I have a suggestion. If you think about what it is like for Susanne to go through one day with the pain that she has and think about what would be fair compensation for that one day, what do you think it would be? Would it be $100 to go through that in a day? Would it be $75? Would it be $50, $40?

Ladies and gentlemen, we want to be scrupulously fair about our request to you. So I am going to suggest to you that you award Susanne $30 a day for the loss of those three elements: pain and suffering, mental anguish, and loss of enjoyment of life. That is $10 a day for each one. *I put it to you for your consideration to follow that through.*

You would do it this way, there are 365 days a year. I am just going to put here pain and suffering, mental anguish, loss of enjoyment of life. Now there are 365 days in a year. And Susanne's six years she has already suffered in these ways and 29 more, that is 35 years total that she should be compensated for. And if you multiply 35 times 365, there are 12,775 days. And if you multiply that figure by the $30 per day I just suggested, it comes out to $383,250 — sorry. $383,250.

Now, another way of thinking of that is if you divide 35 years into this figure of $383,250 it comes out to slightly under $11,000 a year. Maybe that would be a help to think for you $11,000 a year to live the way she lives, to lose what she has lost. *Perhaps that would be a help for you; I don't know.* (Emphasis added.)

The caveats in this argument are nearly invisible, and an additional statement in rebuttal is no better. The residue is a set of specific numbers that are, by the majority's holding, proper, but which at least deserve a specific cautionary instruction. Yet the majority would substitute counsel's at best ambiguous message for a clear instruction from the bench about the use of the numbers.

I would not, and I dissent.