Timothy A. RANDALL,
Plaintiff–Appellee,

v.

K–MART CORP., Defendant–Appellant.

No. 1574, Docket 97–9043.

United States Court of Appeals,
Second Circuit.

Argued May 20, 1998.

Decided July 24, 1998.

Sandra A. Strempel, Burlington, VT (Dinse, Knapp & McAndrew, P.C., on the brief), for Defendant–Appellant.

Richard Linton Brock, Montpelier, VT (Kimberly B. Cheney, Cheney, Brock & Saudek, P.C., on the brief), for Plaintiff–Appellee.

Before: WINTER, Chief Judge, JACOBS, Circuit Judge, and CARMAN, Chief Judge.*

JACOBS, Circuit Judge:

Plaintiff-appellee Timothy Randall ("Randall") suffered personal injury when he slipped on birdseed spilled in an aisle of a Kmart store, and was awarded $275,000 by a jury in the United States District Court for the District of Vermont (Gagliardi, *J.***). Defendant-appellant Kmart Corporation moved for judgment as a matter of law on the ground that Randall failed to prove that Kmart had actual or constructive knowledge of the dangerous condition created by the spill. The district court denied the motion, and Kmart appeals. We reverse.

### Background

Randall and his wife Theresa were shopping at a Kmart store in South Burlington, Vermont, when he slipped and fell on some birdseed that was scattered on the floor. After Randall got to his feet, the couple went to the front of the store and reported the accident to a cashier. The cashier alerted Kmart's loss control manager, Tim Ryan, who came to the front of the store with a customer-accident report form. The Randalls told Ryan what had happened, and Theresa Randall led Ryan to the aisle in which the accident occurred. The birdseed was still on the floor.

Randall's complaint alleged that Kmart was negligent in permitting the birdseed to accumulate or remain on the floor. (Theresa Randall's claim for loss of consortium was withdrawn prior to trial.) The evidence at trial showed, *inter alia,* that the spill site had been inspected approximately thirty minutes before the accident, when Ryan walked down the aisle "past that particular spot" and "did not see any birdseed on the floor." Ryan testified that, when he returned to the aisle with Theresa Randall after the accident, he saw "more than a cup" of birdseed spread "all over" a "substantial part of the floor." Ryan also recalled that some Kmart employees were in a nearby aisle, but he did not ask those employees how long the birdseed had been on the floor.

The jury found Kmart negligent and awarded Randall $275,000 in damages. Kmart filed a post-verdict motion for judgment as a matter of law, arguing that Randall failed to bear his burden under Vermont law of showing that Kmart had actual or constructive knowledge of the dangerous condition created by the spilled birdseed. The district court denied the motion without explanation. Kmart now appeals.

### Discussion

We review *de novo* the denial of judgment as a matter of law. *Dailey v. Societe Generale,* 108 F.3d 451, 455 (2d Cir. 1997). We thus apply the same standard as the district court: "whether there was such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Id.* (quotation marks omitted). In doing so, we "view the evidence in the light most favorable to the party against which the motion was made ... making all credibility assessments and drawing all inferences in favor of the non-movant." *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996) (citations and quotation marks omitted).

---

* Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.

** Honorable Lee P. Gagliardi, of the United States District Court for the Southern District of New York, sitting by designation.

This appeal presents two issues: (1) whether there was sufficient evidence to support a jury finding that Kmart knew or should have known of the dangerous condition created by the spilled birdseed, and (2) if not, whether Kmart may be liable anyway on the theory that the "self-service" method of sale at Kmart creates a reasonably foreseeable risk of harm. We conclude that the evidence was insufficient to support the jury verdict under either theory.

## 1. Notice

■ It is well established under Vermont law that "[i]n order to impose liability for injury to an invitee by reason of the dangerous condition of the premises, the condition must have been known to the owner or have existed for such time that it was [the owner's] duty to know it." *Dooley v. Economy Store, Inc.*, 109 Vt. 138, 194 A. 375, 377 (1937); *see also Wakefield v. Levin*, 118 Vt. 392, 397, 110 A.2d 712, 715 (1955); *Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 393, 264 A.2d 796, 799 (1970); *Mortiboys v. St. Michael's College*, 478 F.2d 196, 197 (2d Cir. 1973) (applying Vermont law). This principle is illustrated by two cases that arrive at opposite results. In *Dooley*, the plaintiff slipped on a loose metal fitting at the top of a staircase in a shop. The Supreme Court of Vermont directed judgment for the defendant because there was a lack of evidence that the condition "had existed a sufficient length of time to charge [the defendant] with knowledge." *Id.* 194 A. at 377. In *Stevens v. Cohen*, 138 Vt. 7, 409 A.2d 604 (1979), the plaintiff tripped and fell on a skate lying at the bottom of a stairway. The Supreme Court of Vermont reversed the trial court's dismissal of the claim because there was testimony that the store owner may have passed the spot immediately before the accident, and because the court therefore could not say "that there was [*n*]o evidence from which to infer that [the defendant] should have known that the offending skate was resting at the base of the stairs." *Id.* at 9, 409 A.2d at 605–06 (emphasis added).

On appeal, Kmart argues that Randall failed to prove that Kmart knew the birdseed was on the floor prior to the accident, or that the birdseed was on the floor for a sufficient length of time that Kmart should have discovered it. The only evidence that relates to the length of time the birdseed was on the floor was Ryan's testimony that the birdseed was *not* on the floor when he walked down the aisle thirty minutes before the accident. However, this testimony is not incompatible with the possibility that the spill occurred only moments before the accident, and therefore fails to support the inference that the birdseed was on the floor for a sufficiently long period of time that Kmart should have discovered it.

Randall does not argue on appeal that Kmart had actual knowledge of the spilled birdseed. Instead, Randall contends that Kmart should have known about the dangerous condition, and that the jury could have so found, because (i) the birdseed was "all over the floor," and (ii) Kmart employees were "in the adjacent aisle" at the time of the accident.

■ (i) According to Randall, evidence that the birdseed was "all over the floor" supports an inference that the birdseed "had been there a long time," long enough "to have been kicked or pushed around the aisle by feet or shopping carts." Ryan testified, however, that "when [birdseed] hits a hard floor like that, it bounces around," and Randall presented no evidence to suggest that the birdseed was scattered by traffic over time. There was no evidence, for example, of footprints or the tracks of shopping carts, or of the crushing of seeds under feet or wheels. Nor was there any evidence as to how many people were in the store at the time of the accident.

Randall analogizes his case to the slip and fall in *Kenney v. Kroger Co.*, 569 So.2d 357 (Ala.1990), in which the Supreme Court of Alabama ruled that the characteristics of the spill itself could support an inference as to when it happened—*i.e.*, that "the length of time necessary for an amount of Pine–Sol to collect in a pool large enough to saturate the [plaintiff's] clothing" was sufficient to give the defendant constructive notice of the spill. *Id.* at 359. Again, however, Randall presented no evidence to suggest what caused the spill (such as a ruptured bag on a shelf) or

the rate at which the birdseed was deposited on the floor.

■ (ii) Randall contends that the presence of employees "in an adjacent aisle" gave Kmart constructive knowledge of the spilled birdseed. However, the presence of employees in *another* aisle does not support an inference that they would have heard the birdseed spill or seen it on the floor. The Georgia case on which Randall relies states that "[c]onstructive knowledge may be inferred where there is evidence that an employee of the defendant was in the immediate vicinity," but adds that the inference is available only if the employee "could easily have noticed and removed the substance." *Hilsman v. Kroger Co.*, 187 Ga.App. 570, 571, 370 S.E.2d 755, 756 (1988). Even assuming (without deciding) that Vermont would adopt *Hilsman*, there was no evidence here to support a finding that the Kmart employees in the adjacent aisle easily could have noticed the spilled birdseed.

In summary, there was insufficient evidence to support an inference that Kmart knew about the spill, or that it should have known by reason of how long the spill had existed. Under well settled Vermont law, the district court erred in denying judgment as a matter of law.

## 2. The "Business Practice" Exception

■ The Vermont notice requirement has an exception for "business practices" that create a reasonably foreseeable risk of harm to invitees. The Supreme Court of Vermont first recognized this exception in *Forcier v. Grand Union Stores*, 128 Vt. 389, 264 A.2d 796 (1970), which involved a plaintiff who slipped on a small piece of banana in the produce section of a supermarket. Although the plaintiff failed to establish actual or constructive knowledge of the dangerous condition, the court observed that the case involved a "self-service method of displaying ... fruits and vegetables" whereby produce was stored in open bins and was handled by both customers and employees. *Id.* at 394, 264 A.2d at 799. The court concluded that these circumstances imposed a heightened duty on the merchant to anticipate dangerous conditions:

This self-service method ... carried with it a corresponding duty of care by the store to use reasonable measures to discover and remove from the floor debris which may have been dropped or knocked to the floor by persons at the counter. Debris on the floor is to be anticipated in a self-service operation. The fact can reasonably be concluded that such hazard to business invitees constituted a risk of harm within the reasonable foresight of the defendant and that it should have taken reasonable steps to obviate the danger.

*Id.* A merchant that uses such a self-service method of sale must bear the burden of showing what steps were taken to avoid the foreseeable risk of harm. *Id.* at 394, 264 A.2d at 800.

The Supreme Court of Vermont returned to this issue in *Debus v. Grand Union Stores of Vermont*, 159 Vt. 537, 621 A.2d 1288 (1993), in which a pallet of boxes fell on a customer. The evidence showed that the merchant's practice was to bring pallets stacked with merchandise into the aisle for restocking purposes during business hours. The court explained that "*Forcier* modified *Dooley*" by holding that a store owner has a "duty of active care" to protect customers against business practices that present a foreseeable danger to customers:

In *Forcier*, the business practice of using a self-serve method to sell loose produce gave rise to an increased duty of care on the defendant's part to remove floor debris because such debris is to be anticipated in a self-service operation. The resultant hazard to business invitees constituted a risk of harm within the reasonable foresight of the defendant.

Similarly, in the present case we are faced with a routine business practice that creates a hazard for defendant's customers. The risk of floor debris from an ordinary self-serve produce display is no greater than the risk of pallets loaded with heavy boxes waiting for shelf stocking throughout the aisles.

*Debus*, 159 Vt. at 545–46, 621 A.2d at 1294 (citation omitted).

Randall attributes his injury to a "business practice" that created a foreseeable risk of harm—Kmart's "self-service method of selling merchandise"—and contends therefore that he was not required to prove how long the birdseed was on the floor. The business practice exception was created to address the hazard associated with customers who hand-pick produce from open bins, *see, e.g., Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966) (string beans), but the exception in Vermont has been broadened considerably. *See Debus,* 159 Vt. at 545–46, 621 A.2d at 1294. Even so, it is insufficient for Randall to characterize Kmart's merchandising method generally as "self-service," without explaining how Kmart's merchandising of birdseed posed a hazard. Otherwise, every retailer that is not a full-service boutique would be subject to the exception, and the exception would thereby become the rule. Randall relies on *Chiara v. Fry's Food Stores,* 152 Ariz. 398, 733 P.2d 283 (1987) (extending Arizona's "business practice" exception to bottled "creme rinse"), but we see no reason to assume that Vermont would extend the exception so far.

Under *Forcier,* Randall was required to show that Kmart's method of selling birdseed created a foreseeable risk of harm in order to impose on Kmart the burden of showing that it took reasonable steps to protect its customers against the hazard. However, we find no evidence (and Randall cites none) that indicates how Kmart sold birdseed: in bags of paper or plastic or burlap, or in boxes, or in canisters, or loose and in bulk. On this record, a reasonable jury could not find that Kmart's method of selling birdseed created a foreseeable risk.

### Conclusion

The judgment of the district court is reversed, and the case is remanded with instructions to enter judgment for Kmart.