Eric EISENBERG, Plaintiff–Appellee,

v.

Douglas REID, Defendant–
Cross–Claimant,

Ruby Summers, formerly known as Ruby Hay, Defendant–Cross–Defendant–Appellant,

Mary Patten, Valenvalls, Defendants–Cross–Defendants.

No. 02–7949.

United States Court of Appeals, Second Circuit.

Sept. 4, 2003.

---

Ruby Summers, Yonkers, NY, pro se.

Richard J.J. Scarola, Scarola Reavis & Parent, New York, NY, for Appellees.

PRESENT: MESKILL, MINER, and STRAUB, Circuit Judges.

### SUMMARY ORDER

Defendant–Appellant Ruby Summers ("Summers"), appearing *pro se,* appeals from the June 27, 2002 judgment of the United States District Court for the Southern District of New York (Gerard E. Lynch, *Judge* ) upon a jury verdict finding her liable to plaintiff, Eric Eisenberg, a citizen of France, for her role in a fraudulent investment scheme. After trial on the merits, the jury found Summers liable for both fraud and conversion, returning a verdict against Summers in the amount of $100,000 in compensatory damages and $675,000 in punitive damages. On appeal, Summers principally argues that there was insufficient evidence for the jury to find that she knowingly deceived the plaintiff and that the punitive damages award against her was excessive.

■ In considering an appeal to overturn a jury verdict, we examine "whether there was such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Randall v. K–Mart Corp.,* 150 F.3d 210, 211 (2d Cir.1998) (internal quotation marks omitted). In this case, the jury verdict is amply supported by the evidence presented at trial. To cite one example, co-defendant Reid gave extensive testimony at trial that Summers knew Reid was falsely presenting himself as a Bear Stearns employee and advised him on how to continue his charade. Furthermore, " '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *Otero v. Bridgeport Hous. Auth.,* 297 F.3d 142, 151 (2d Cir.2002) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)); *see also Presley v. United States Postal Serv.,* 317 F.3d 167, 178 (2d Cir.2003) ("[T]he ultimate decision as to all witnesses' credibility and as to the persuasive force of their testimony is for the trier of fact, as is the ultimate determination of damages, subject only to the outer limits of reasonableness.").

The defendant's challenge to the punitive damages award is also without merit.*

---

* Following entry of the jury's verdict, Summers moved orally for judgment notwithstanding the verdict. The district court granted her two weeks to file post-trial motions, "specifically indicating that it would be most useful for her primarily to address the appropriateness of the amount awarded in punitive damages." Summers did not meet the deadline, offering as an excuse that the trial transcript was not yet available. In her

Under federal law, "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). "Only when an award can fairly be categorized as 'grossly excessive' in relation to these interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Id.* The U.S. Supreme Court has set forth three factors to guide assessment of the constitutionality of a punitive damages award: (1) "the degree of reprehensibility of the defendant's conduct"; (2) the disparity between the actual or potential harm suffered and the punitive damages awarded; and (3) the difference between the punitive damages awarded in a particular case and "the civil or criminal penalties that could be imposed for comparable misconduct." *Id.* at 574–75, 580, 583, 116 S.Ct. 1589.

■ All three factors point to the constitutional permissibility of the award against Summers. First, Summers knowingly and repeatedly engaged in trickery and deceit. *See id.* at 576–77, 116 S.Ct. 1589 (stating that "trickery and deceit are more reprehensible than negligence" and that "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law") (citation and internal quotation marks omitted). Second, the ratio of punitive damages to compensatory damages in this case, approximately 7:1, is well below the 500:1 ratio found unconstitutional in *BMW*. *Id.* at 581–82, 116 S.Ct. 1589.

As to the third prong, Summers has cited no authority to indicate that the punitive damages in this case are out of line with comparable civil and criminal penalties. Furthermore, punitive damage awards in comparable cases provided Summers with adequate notice of the potential punitive damages that could result from her conduct. *See Am. Fin. Servs. Group v. Treasure Bay Gaming & Resorts*, No. 99CIV.1068NT, 2000 WL 815894, at *16 (S.D.N.Y. June 23, 2000) (awarding $5,000,000 in punitive damages in an action that resulted in compensatory damages of $493,500, based on a party's repeated and intentional misrepresentations as to its financial condition); *Sanders v. Gardner*, 7 F.Supp.2d 151, 156, 179 (E.D.N.Y.1998) (upholding an arbitrator's punitive damage award of $10,000,000 for repeated and intentional misrepresentation by a brokerage that resulted in a compensatory damage award of $184,583); *see also Valle v. Nat'l Basketball Ass'n*, 42 F.Supp.2d 334, 345–47 (S.D.N.Y.1999) (examining comparable case law as part of the third prong of

---

request for additional time, Summers "ignor[ed] the issue of punitive damages and instead propos[ed] an extension of time in order to challenge the reasonableness of the jury's verdict." The District Court denied her request, noting that the "jury heard overwhelming evidence" that she defrauded the plaintiff and that because "she has shown contemptuous disregard for previous judgments against her," additional delay would "require extensive security measures" requested by the plaintiff including "expedited judgement enforcement discovery and re-

straints on alienation of defendant's property."

Because Summers did not argue for judgment notwithstanding the verdict on the grounds of either the availability or amount of punitive damages awarded, she may have waived this issue. *See, e.g., Tolbert v. Queens College*, 242 F.3d 58, 75–77 (2d Cir.2001) (denying defendants' challenge to the jury's award of punitive damages where not properly raised at trial). As Summers was not represented by counsel, we choose to decide this case on other grounds.

the *BMW* test). Therefore, none of the factors identified by the Supreme Court in *BMW* present a basis for modifying the jury's award of punitive damages.

We have reviewed Summers' other contentions and found them without merit. For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.