Filed 05/23/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03851

Christian Placey v. Affordable Care, LLC, et al

## DECISION ON MOTION TO AMEND COMPLAINT

In this purported class action case, following the initial stages of discovery, the named plaintiff, Christian Placey, seeks to amend his complaint to flesh out his factual allegations, and on the basis of those allegations to assert a new claim for negligent business practices (Count II), to expand the existing dental malpractice claim (Count IV) from a personal claim to a class-wide claim, and to expand that claim to include Affordable Care, LLC as a Defendant. The court previously granted a motion for default judgment against Defendants Stephen Bench and Affordable Dentures & Implants – Burlington, VT, P.C. The remaining Defendants oppose these amendments on the basis that they are untimely and would be futile. The court grants the motion.

"Leave to amend a complaint is liberally granted and 'shall be freely given when justice so requires.' " *LeClair v. LeClair*, 2017 VT 34, ¶ 27, 204 Vt. 422 (quoting *Lillicrap v. Martin*, 156 Vt. 165, 170 (1989)). Vermont has a liberal amendment policy " '(1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to [it] at an earlier stage in the proceedings.' " *Id*. (quoting *Bevins v. King*, 143 Vt. 252, 255 (1983)); *accord Gauthier v. Keurig Green Mountain, Inc.*, 2015 VT 108, ¶ 43, 200 Vt. 125 (" '[T]rial courts are to be liberal in permitting amendments to the pleadings.' ") (quoting *Lillicrap*, 156 Vt. at 170). " 'When there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion.' " *Gauthier*, 2015 VT 108, ¶ 43 (quoting *Bevins,* 143 Vt. at 254–55).

Defendants do not assert that Mr. Placey acted in bad faith, nor do they claim prejudice. Rather, they assert that the motion is not timely and that the amendments would be futile. The court can quickly dispose of the timeliness objection. Plaintiff asserts, and Defendants do not seriously dispute, that he became aware of many of the newly-asserted facts, and therefore the factual basis for the

newly-asserted claims, only after propounding and receiving discovery. There is no suggestion of dilatory practice, nor of prejudice. Thus, Plaintiff's assertion is enough to save the proposed amendment from a timeliness attack.

What remains, then, is Defendants' argument that the amendment is futile. Amendment is futile "if the amended complaint cannot withstand a motion to dismiss." *Vasseur v. State*, 2021 VT 53, ¶ 7, 215 Vt. 224 (citing *Prive v. Vt. Asbestos Grp.*, 2010 VT 2, ¶ 13, 187 Vt. 280). To determine whether a complaint can withstand a motion to dismiss, the court "must take the factual allegations in the complaint as true, and consider whether 'it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief.' " *Colby*, 2008 VT 20, ¶ 5 (quoting *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (quotations omitted)).

Obviously, the court cannot determine on a motion to dismiss whether factual allegations are futile; only the evidence (and, ultimately, the factfinder) can determine whether those allegations can or cannot be proven. The question, instead, is whether those new allegations, if proven, state a cognizable claim for relief. Thus, the court examines the newly-asserted facts to determine first whether they support the newly-asserted claims and second, whether those claims are cognizable.

Proposed Amendments

The newly-asserted factual allegations suggest the following narrative. Defendant Affordable Care, LLC ("Affordable Care") designs, manufactures, markets, and distributes dental implants, dentures, and other dental products. Proposed Amended Complaint ("Am. Complaint") ¶ 2. Affordable Care was the de facto owner and operator of dental offices around the country, including the South Burlington dental office where Dr. Bench had his dental practice. *Id*. ¶¶ 49–64. Affordable Care's business model included recruiting dentists willing to staff offices on its behalf. *Id*. ¶ 43. When "willing dentists" were identified, Affordable Care provided them with "turnkey" offices. *Id*. ¶ 46. Affordable Care controlled Dr. Bench's office space lease and provided or arranged for the furnishings and equipment necessary for the office. *Id*. ¶ 50–51. Affordable Care handled all staffing and human resources needs, including pay levels, benefits, performance reviews, employee relations, recruitment, and maintenance of employment records. *Id*. ¶ 52. It managed inventories and supplies at the office. *Id*. ¶ 53. Affordable Care trained technicians to manufacture its products and staffed laboratories located at its offices, including Dr. Bench's office, to manufacture dentures, implants, and other dental products. *Id*. ¶¶ 61–62.

Affordable Care ran a national ad campaign via television, radio, social media, and the internet designed to attract consumers to the dental offices it controlled, where the dentists it hired practiced, and where its dentures, implants, and dental products were manufactured and sold. *Id*. ¶ 58. Affordable Care required the dentists it hired to create professional corporations that contracted with Affordable Care through service agreements. Affordable Care prepared the corporate documents for its dentists' professional corporations. *Id*. ¶¶ 65–66. Affordable Care held Dr. Bench out to the public as its agent or employee, and customers seeking dentures, implants, and associated dental care went to the South Burlington office seeking Affordable Care's products rather than treatment specifically from Dr. Bench. *Id*. ¶¶ 87, 90–92.

Dr. Bench's relationship with Affordable Care deteriorated over time. By the late summer of 2022, Affordable Care stopped staffing the South Burlington office lab, and the lab stopped producing customers' dentures and associated products. Affordable Care continued selling its products through Dr. Bench, however, even though it knew that the treatment of hundreds of patients was delayed or not completed due to the labs' inadequate staffing and product termination. *Id*. ¶¶ 76–80.

Once a dentist "disaffiliates" with Affordable Care, the dentist's right to use the office or products provided by Affordable Care terminates. *Id*. ¶¶ 69–71. In early October 2022, Dr. Bench gave a 90-day notice of disaffiliation; Affordable Care locked Dr. Bench out of the South Burlington office and chained the door closed in early January 2023. *Id*. ¶¶ 81–83. Despite the availability of another active professional corporation with a Vermont-licensed dentist, Affordable Care made the business decision to stop providing products and services in Vermont and abandoned the consumers/patients who were still undergoing treatment. *Id*. ¶¶ 84–86.

<u>Analysis</u>

Defendants initially argue that Mr. Placey's "negligent business practices" claims are barred by the economic loss doctrine. The purpose of the economic loss doctrine is "to maintain a distinction between contract and tort law" by " 'prohibit[ing] recovery in tort for purely economic losses.' " *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.*, 2012 VT 80, ¶ 10, 192 Vt. 322 (quoting *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513); *accord Walsh v. Cluba*, 2015 VT 2, ¶ 27, 198 Vt. 453. The doctrine most commonly applies when a plaintiff asserts a claim for negligence in what is essentially a breach of contract case. *See Springfield Hydroelectric Co. v. Copp*, 779 Vt. 311, 314 (2001) ("The underlying premise of the economic loss rule is that negligence actions are best suited for 'resolving claims involving unanticipated physical injury, particularly those arising out of an accident.

Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.' ") (quoting *Spring Motors Distribs. v. Ford Motor Co.,* 489 A.2d 660, 672 (N.J. 1985)). Although Mr. Placey asserts a breach of contract claim, he also alleges that he suffered physical damages caused by Defendants' negligent behavior. The economic loss doctrine, therefore, does not come into play. *See* Am. Complaint ¶ 137 ("As a direct and proximate result [of Defendants' negligent business practices], plaintiff, and those similarly situated, suffered physical pain and suffering, emotional and economic distress, humiliation, shame, fear, and inconvenience[.]"); *id.* ¶¶ 154–55, 161–67, 176–78) (describing physical and emotional harms Mr. Placey and others in purported class suffered resulting from Defendants' dental negligence).

1. Negligent Business Practices

In his amended complaint, Mr. Placey describes a business model Affordable Care developed that included the recruitment of dentists to staff its dental offices, which Mr. Placey describes as Affordable Care's sales and distribution centers. He provides details about the control Affordable Care exercised over the dental offices, the services and products it offered and provided, and the advertisements it aimed at consumers in Vermont. Am. Complaint ¶¶ 43–75. Mr. Placey asserts that Affordable Care "lured hundreds of Vermonters, including Mr. Placey, to the doors of their South Burlington location and took thousands of dollars up front for dental services and dentures that were never provided." *Id.* ¶ 104. He alleges that he and other members of the purported class were customers of Affordable Care and that Affordable Care owed them a duty to act reasonably and protect them from the harm caused by the abandonment of their care. *Id.* ¶ 127. Mr. Placey alleges that Affordable Care's "policies, practices, and conduct unreasonably exposed consumers of its dental products and services to harm from patient abandonment" and that Affordable Care knew or should have known that its policies, practices, and conduct would jeopardize its customers' health. *Id.* ¶¶ 129–30. Mr. Placey asserts that it was foreseeable to Affordable Care that its business practices could cause its customers to have their dental care abandoned and suffer harm and that Affordable Care knew its customers would be abandoned if Dr. Bench was not permitted to continue caring for patients at the South Burlington office and another dentist was not placed into that office. *Id.* ¶¶ 131–33. Finally, Mr. Placey asserts that Affordable Care's negligent business practices proximately caused him and other putative class members to suffer physical pain, suffering, emotional distress, and economic loss. *Id.* ¶ 137.

Decision on Motion to Amend Complaint
of **10**
23-CV-03851 Christian Placey v. Affordable Care, LLC, et al

Page **4**

Defendants contend that Affordable Care owed no duty to consumers of its products, basing its argument on agreements it had with Dr. Bench. According to Defendants, the Services Contract shows that Dr. Bench retained sole control over his practice in South Burlington, and that Dr. Bench's relationship with Affordable Care was not one of employee/agent. Instead, Affordable Care posits, Dr. Bench was an independent contractor. Opposition at 3–5. Affordable Care also cites to an employment agreement between the Bench Practice and Dr. Bench. *Id*. at 6. Consumers of Affordable Care's products, however, were not parties to or aware of the Services Contract or any employment agreement when they went to Dr. Bench's office to obtain Affordable Care's products. *See* Am. Compl., ¶¶ 89–90. Although the documents on which Defendants rely may be a defense to a claim by Dr. Bench that he was an employee/agent of Affordable Care, there is no suggestion that third-party consumers were either privy to or aware of the contractual relationship between Affordable Care and Dr. Bench. As a result, these documents cannot govern Affordable Care's relationship with Mr. Placey or the other purported class members.

Defendants' reliance on 26 V.S.A. § 564 to argue that it could not legally serve as the owner or operator of the Bench Practice is also misplaced. *See* Opposition at 16. This statute makes clear that Affordable Care may not legally own or operate a dental practice. Of course, that does not mean that Affordable Care was not, in fact, unlawfully doing so. A lot of things are against the law, but that does not mean that violations do not occur. *See Hannon v. Siegel-Cooper Co.*, 167 N.Y. 244, 246 (1901) ("But though it was beyond the corporate powers of the defendant to engage in the business this does not relieve it from the torts of its servants committed therein[.]") (citation omitted).

More fundamentally, and contrary to Defendants' suggestion otherwise, Vermont has recognized a company's potential liability for negligent business practices. In *Debus v. Grand Union Stores of Vt.*, 159 Vt. 537, 545 (1993), the defendant was a retail store, and the plaintiff was an individual who suffered injuries when "a pallet of boxes, piled high and imbalanced, toppled over and fell upon her." *Id*. at 538. The store routinely had its clerks restock its shelves during operating hours. *Id*. at 539. In discussing the store's liability for the plaintiff's injuries, the Court wrote, "It was not plaintiff's duty to guard herself against defendant's routine business practice [of restocking the shelves while customers were encouraged to shop], but defendant's duty to protect plaintiff against a business practice that presented a danger to customers." *Id*. at 545; *see also Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 394 (1970) (routine business practice of using self-service method to sell loose produce gives rise to increased duty to remove floor debris; resulting hazard "constituted a risk of harm within

Decision on Motion to Amend Complaint
Page **5** of **10**
23-CV-03851 Christian Placey v. Affordable Care, LLC, et al

the reasonable foresight of the defendant and . . . it should have taken reasonable steps to obviate the danger"); *accord Waukon Auto Supply v. Farmers & Merchs. Sav. Bank*, 440 N.W.2d 844, 845–46 (Iowa 1989) (appeals court affirmed trial court's decision that bank's business practice of allowing anyone engaged in business locally to make cash transactions, without ensuring that particular individual cashing checks was authorized by business to do so, was negligent); *Reis v. Volvo Cars of N. Am.*, 964 N.Y.S.2d 125, 128 (App. Div. 2013) (jury could reasonably conclude defendants' business practice of failing to use starter interlock device in vehicles was negligent).

2. Dental Negligence

In his initial Complaint, Mr. Placey alleged that Dr. Bench is liable for dental negligence because he deviated from the standard of care by, *inter alia*, failing to complete the dental treatment and procedures he began before abandoning Mr. Placey and leaving him with unusable temporary dentures and a mouth full of infection. Mr. Placey now asserts that Affordable Care is vicariously liable for Dr. Bench's negligence because it held Dr. Bench out as its agent. Affordable Care does not contest Dr. Bench's negligence but denies that it is vicariously liable. Affordable Care denies that Mr. Placey was its agent, again relying on 26 V.S.A. § 564 and its agreements with Dr. Bench to argue that it cannot be held liable for dental negligence because it is not authorized to own or operate a dental practice and its agreements with Dr. Bench prove otherwise. Opposition at 19. For the reasons stated above, neither the statute nor the agreements with Dr. Bench support Affordable Care's position as against consumers of Affordable Care's products.

Mr. Placey relies on the doctrine of apparent authority to argue that Dr. Bench was Affordable Care's agent and that Affordable Care is, therefore, vicariously liable for Dr. Bench's negligence. Motion at 13–14. Apparent authority is based on " 'conduct of the principal, communicated or manifested to [a] third party, which reasonably leads the third party to rely on the agent's authority.' " *Lakeside Equip. Corp. v. Town of Chester*, 2004 VT 84, ¶ 7, 177 Vt. 619 (mem.) (quoting *Lakeside Equip. Corp. v. Town of Chester*, 173 Vt. 317, 325 (2002)) (further quotation and citation omitted).

> "Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent. Apparent authority also may arise when the principal knowingly permits the agent to act in a certain manner as if he were authorized. The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable."

*New England Educ. Training Serv., Inc. v. Silver St. P'ship*, 148 Vt. 99, 105 (1987) (quoting *Miller v. Mueller*, 343 A.2d 922, 926 (Md. Ct. Spec. App. 1975)); *see* Restatement (Second) of Agency § 27 cmt. a (finding apparent authority requires that principal intends third party to believe agent is authorized to act for it or that its conduct is likely to create such belief).

Mr. Placey asserts that Affordable Care's advertising intended to, and did, create the reasonable belief in consumers' minds that when they underwent treatment with Dr. Bench, they were purchasing dentures, implants, and treatment plans from Affordable Care's national dental business or practice. Am. Complaint ¶ 9. In support of his claim that Affordable Care held Dr. Bench out as its agent, Mr. Placey asserts the following:

48. Affordable represented to the public that it was a nationwide dental practice with over 400 locations.
 . . .

58. Affordable maintains a national ad campaign via television, radio, social media and internet designed and intended to feed consumers to its sales and distributions centers which sell Affordable's dentures, implants, and dental products.
. . .

60. Affordable also develops and implements marketing plans for the individual sales and distribution centers.
. . .

74. Affordable purposely represented to consumers that they were purchasing products and treatment from Affordable.

75. Affordable's South Burlington sales and distribution center's webpage as of July 31, 2021, among other things:

- Stated "Proudly serving South Burlington . . . We're safely open to care for you";
- Encouraged consumers to "explore our services" with a call-to-action button;
- Noted that "Our practice has invested in GPS Air Cleaning Technology";
- Advertised "Our Services in South Burlington, VT" along with pricing, followed by "Our treatment plans are customized and with services delivered to you in a safe, compassionate, and judgement-free environment — at a price you can afford";
- Stated "We believe everyone deserves to love their smile," followed by "Every day, we see the positive life transformation that happens for our patients as we help them get their smile back";
- Boasted of nearby location ("Proud to service our community"), an on-site lab ("Our practice . . ."), dental implants ("nation's largest provider

network"), no hidden fees, free consult ("we offer . . ."), and easy financing;

- Listed Dr. Bench under "Meet Your South Burlington Dental Team";
- Described "Our Process" with this text:

> Every day, we witness the life changing transformation that a new smile brings to our patients. We care deeply for our patients and we are committed to helping you find the right solution at the right price, delivered to you at the right time when you need it. We are here for you every step of the way.

- Noted that "A member of our team" would contact consumers before their first visit; and
- Featured "Patient Reviews."

. . .

89. Affordable purposely concealed or obscured the true nature of its relationship with Dr. Bench from consumers.

90. Consumers reasonably believed that they were receiving products and services from Affordable Dentures®, a national dental practice.

91. Consumers chose to purchase products and services from Affordable Dentures®, a national dental practice.

92. On information and belief, neither plaintiff nor any prospective class member had a prior relationship with Dr. Bench. No consumers went to the South Burlington sales and distribution center seeking treatment from Dr. Bench specifically.

93. As the dentist on staff, Dr. Bench's patient care was a fundamental service provided by Affordable at its sales and distribution center.

Affordable Care is correct that merely displaying a trade name or logo does not necessarily mean that a principal is cloaking an agent with apparent authority. Opposition at 20. If Dr. Bench's display of Affordable Care's logo or use of its name was the sole basis for Mr. Placey's argument, Affordable Care might fairly assert that it did not hold Dr. Bench out as its agent. Mr. Placey alleges, however, that Affordable Care did so much more to cause consumers to believe they were dealing with it when they went to Dr. Bench's office.

The court has found no Vermont authority addressing the apparent authority of a dentist in a situation similar to that here. The trend around the country, however, is that the doctrine of apparent authority applies to medical facilities holding its providers out to the public as their employees or

agents. In a case from Rhode Island, for example, a court considered whether a dental clinic could be held liable for an orthodontist's negligence when the clinic claimed that the orthodontist was an independent contractor over whom it exercised no control. *George v. Fadiani*, 772 A.2d 1065, 1066–67 (R.I. 2001). In opposition to the clinic's motion for summary judgment, the plaintiff asserted that the clinic held itself out to her and the public-at-large as a provider of dental services, she reasonably believed the clinic was providing her with dental services, and a receptionist of the clinic set up her appointment with the orthodontist. *Id*. at 1068. Reversing the trial court's grant of the clinic's motion for summary judgment, the Rhode Island Supreme Court explained that a plaintiff must establish the following to sustain a malpractice action against a medical corporation based on apparent authority: (1) the conduct of the corporation or its agents led a reasonable person to believe that the medical professional was an employee or agent of the corporation; (2) the consumer actually believed the medical professional was an agent or employee of the corporation; and (3) the consumer relied to his or her detriment on the care and skill of the allegedly negligent medical professional. *Id*. at 1069 (citation omitted); *accord McCarthy v. Dillon's Dental Servs., L.L.C.*, No. 1-12-2221, 2013 WL 3325069, at *3 (Ill. App. Ct. June 26, 2013) (apparent authority is established if dental office holds itself out as provider of care without informing patient that care is provided by independent contractor); *Hannon*, 167 N.Y. at 246–47 (department store that advertised provision of dental services vicariously liable for negligence of dentist who rendered services to plaintiff who relied on store's representations); *see also Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E.3d 1064, 1073 (Ind. 2022) ("non-hospital medical entity holding itself out as a health care provider may be held vicariously liable for its independent contractor physician's tortious acts unless it gives meaningful notice to the patient, the patient has independent special knowledge of the arrangement between the non-hospital medical entity and its physicians, or the patient otherwise knows about these relationships"); *Eads v. Borman*, 277 P.3d 503, 514 (Ore. 2012) (determining vicarious liability in medical services context involves asking: (1) whether the principal "held itself out, expressly or implicitly, as a direct provider of medical care so as to lead a reasonable person to conclude that the negligent actor . . . was the principal's employee or agent" and (2) "whether the plaintiff relied on those representations by looking to the putative principal, rather than to a specific physician, as the provider of the care"); *Kashishian v. Port*, 481 N.W.2d 277, 284–85 (Wis. 1992) (doctrine of apparent authority applies to hospitals and independent medical professionals when all elements of apparent authority are satisfied). The Restatement (Second) of Torts § 429 (1965), upon which *Arrendale* relied, states:

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

Recognizing that Affordable Care is not a clinic, hospital, or medical facility, the court concludes that the principles elucidated above may properly apply here. Whether the facts will bear out this conclusion remains to be seen. The purpose of a motion to dismiss, however, is not to test the facts, but the law. And while the theory on which Mr. Placey rests his claims against Affordable Care has not yet been recognized in Vermont, it is sufficiently plausible to warrant further factual elucidation before being put to the ultimate test. *See Ass'n of Haystack Prop. Owners, Inc. v. Sprague*, 145 Vt. 443, 446–47 (1985) ("courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme") (citations omitted). The court thus concludes that Mr. Placey alleges sufficient facts in his amended complaint to survive a motion to dismiss his claim against Affordable Care for vicarious liability based on Dr. Bench's alleged dental negligence.

## ORDER

The court grants the motion. The proposed amendments are sufficient to withstand a motion to dismiss. Given Vermont's liberal stance of allowing amendments, the timing of the motion to amend, and the lack of prejudice to Defendants, the court will allow the proposed amendments. In granting the motion, the court makes no decision about class certification or which causes of action may be stated on behalf of the purported class. Defendants shall file an answer to the amended complaint within twenty-one days.

Electronically signed pursuant to V.R.E.F. 9(d): 5/23/2025 2:00 PM

Samuel Hoar, Jr.
Superior Court Judge

Decision on Motion to Amend Complaint
of **10**
23-CV-03851 Christian Placey v. Affordable Care, LLC, et al

Page **10**